THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE E. BETTS, Appellant.*

County Court, Nassau County, November 30, 1931.

---

* See, also, *People* v. *Jensen* (142 Misc. 340).

*Francis J. Parks*, for the appellant.

*Elvin N. Edwards, District Attorney,* for the respondent.

BONYNGE, J.   This appeal brings up for review a bad decision by a good judge.   On the afternoon of November sixth the defendant, an undersized man, had three draughts, proportioned to his stature, of a brew of trifling alcoholic content.   While proceeding thence to his home in a small car he was crowded off the road by a large truck and his own vehicle was wrecked.   As is well known such happenings are of daily occurrence since the nation embarked upon its quixotic experiment of destroying its railroads by providing free rights of way for their competitors.   A physician examined the defendant shortly after the accident and, upon his finding of intoxication, the learned justice condemned the defendant to a term of thirty days in the county jail (Vehicle and Traffic Law, § 70, subd. 5).   Such a sentence might find favor with the modern prototypes of the pious Cotton Mather, but it has no place in a free country or an enlightened age.   Be it said to his everlasting credit that the learned justice speedily recognized the undeserved severity of his pronouncement and interceded with this court to mitigate its rigors.   An appeal was allowed and the defendant was paroled in the custody of the justice.

It now transpires that the defendant suffered a concussion of the brain and a possible slight fracture of the skull in the collision and that his shaken condition, when examined by the disciple of Hippocrates, was due to this circumstance and not to the hated alcohol in his midst.   Thus we are taught anew that diagnosis does not always square with inquest.

This court finds no difficulty in yielding to the desire of the learned justice that his judgment be upset.   Any other result would do violence to the most hallowed precedents in the law.   The sentence imposed is contrary to those provisions of the Federal and State Constitutions forbidding the infliction of " cruel and unusual punishments."   (U. S. Const. 8th Amendt.; N. Y. Const. art. 1, § 5.)   It contravenes that passage of the English Bill of Rights (See 1 Wm. & M. Sess. 2, chap. 2 [1688]) declaring " that excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   And lastly the sentence flies in the face of the following provisions of the Magna Charta (June 15, 1215), that most ancient charter of liberty under the common law, viz.:*

---

* See Lincoln's Constitutional History, vol. 1, p. 77 *et seq.*—[REP.

" And the City of London should have all it's ancient liberties, and it's free customs, as well by land as by water. Furthermore, we will and grant that all other Cities, and Burghs, and Towns, and Ports, should have all their liberties and free customs."

" A free-man shall not be amerced for a small offense, but only according to the degree of the offence; and for a great delinquency, according to the magnitude of the delinquency, saving his contenement; * * *." (§ 20.)

" No Bailiff, for the future, shall put any man to his law, upon his own simple affirmation, without credible witnesses produced for that purpose." (§ 38.)

" No freeman shall be seized, or imprisoned, or dispossessed, or outlawed, or in any way destroyed; nor will we condemn him, nor will we commit him to prison, excepting by the legal judgment of his peers, or by the laws of the land." (§ 39.)

" And immediately after the conclusion of the peace, we will remove out of the kingdom all foreign knights, cross-bowmen, and stipendiary soldiers, who have come with horses and arms to the molestation of the kingdom." (§ 51.)

" All fines that have been made by us unjustly, or contrary to the laws of the land; and all amerciaments that have been imposed unjustly, or contrary to the laws of the land, shall be wholly remitted, * * *." (§ 55.)

Resort has been had to ancient precedents because they breathe the spirit of a time when man was groping for liberty and endeavoring to throw off the shackles which bound him. Our present machine age begets machine thinking and hence all of the latter day preachments counsel dumb and ox-like submission to the oppressor's yoke as the panacea of all ills. It may well be doubted, however, whether a regimented nation marching in solemn goose-step is the fairest flowering of liberty.

Lest the decision about to be announced offend the sensibilities of some of the self-constituted regulators of public morals who now infest the land, let it be noted that the learned justice of the court below and this court have exacted a very solemn promise from the defendant that, in the event of any future sinning of like character, he will proceed to his domicile afoot.

The judgment is reversed and the defendant discharged.