THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* OLE JENSEN, Appellant.

County Court, Nassau County, December 28, 1931.

*John P. McCarthy,* for the appellant.

*Elvin N. Edwards, District Attorney [Philip Huntington* of counsel], for the respondent.

BONYNGE, J. The defendant appeals from a judgment convicting him, as a first offender, of the crime of driving an automobile while intoxicated and sentencing him to a term of thirty days in the county jail. He is a man of mature years and of good repute in his community. He owns his own home, is industrious and supports his wife and grown daughters. He lives at peace with his neighbors and has had no previous contact with the law. One of his employers, a member of a well-known Wall Street firm, writes an unsolicited letter describing him as " an efficient, conscientious and sober worker and in every way satisfactory," and saying: " I know that he has been very anxious to take out his citizenship papers and hope that this episode will not interfere, in any way, with his getting them." Testimonials of similar purport from a number of other citizens of standing are attached to the papers on appeal.

In his return the learned justice in the court below certifies: " Although defendant speaks broken English, I am not prepared to say that he misunderstood the meaning of the charge as read to him and statements made to him in Court by the undersigned. Upon reflection, however, I am frank in saying that the sentence, on the assumption of defendant's guilt, was too severe and might be modified by the Appellate Court."

As there was no accident and no property damage, the question here is whether this defendant belongs at home with his family

or in jail with felons. The answer seems so obvious that no one unbitten by the asp of fanaticism should hesitate. Liberty may be restored to the defendant, but the stigma of six days behind bars for an act involving no moral wrong and no injury to any human being, will linger long. Incidents like this give rise to interesting speculations as to the precise obligations of the judicial office. Must a magistrate render lip service to every passing fad of the hour and alone, of all men, part company with his conscience at the beginning of the day's labors? History, as usual, is chart and compass for those who would know. It recounts that Judge SAMUEL SEWALL, late of the Commonwealth of Massachusetts, was one of the foremost exponents of law enforcement of his day. While the blood lust was on him, he, with every appearance of righteousness, condemned numberless old women to death for the crime of witchcraft. However, as the shadows lengthened, he tired of the butchery, came to recognize his delusion as a great mistake, became an outspoken opponent of witchcraft persecutions and died in great peace. It is entirely safe to say that if a magistrate of the present day, who feels himself impelled to impose a sentence like the one under consideration, would first study his history or his Bible, or better yet, eye himself long and earnestly in a mirror, justice would be better served. The most unblushing hypocrisy quails before a searching glance.

As some recent observations by this court, in an analogous case,* have given rise to certain misinterpretations, an effort will be made so to clarify them that even the perversely blind may understand. A man who commits his first offense of driving an automobile while in an intoxicated condition may be a fool, but he is not a felon in the estimation of the generality of mankind. The extent of his foolhardiness depends upon the man himself. Some become better drivers, just as they become better men, under moderate stimulation. Every intelligent person knows that many of the greatest works of art and of literature and countless oratorical gems of the past were vastly aided, if not inspired, by some such agency. In fact, it is even whispered that present day orators are not insensible to the advantages of like fortification. The attempt to ascribe the appalling annual toll of automobile fatalities in this country to drunken driving, and to punish that offense accordingly, is a product of transparent propaganda rather than of sound thinking. Despised alcohol can be called to answer for but a small fraction of the total. Every observant driver of an automobile knows that, in the main, the fatalities are caused by arrogant operators of trucks and buses, who presume upon the superior size and weight of their vehicles

---

* *People* v. *Betts* (142 Misc. 240).

to monopolize the highways; by love-lorn couples, who fail to realize that one-armed driving is less suited to an automobile than to a horse and buggy; and by heedless youth, whose time is worth literally nothing, in an amazing hurry to get nowhere. When the crusade has been extended to include all of these offenders it will be appropriate to put or keep the Ole Jensens of the land in jail. In the meantime a nation which has forsaken the God of its forefathers, the God of quiet places, of repose and of contemplation, in order to render idolatrous worship at the feet of Speed, must pay the penalty of its choice.

Judgment of conviction reversed and defendant discharged.