THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
JOHN HENRY BARKER, Appellant.

CRIMINAL TRIAL — "REASONABLE DOUBT" DEFINED.   A reasonable
doubt is not a mere whim, guess or surmise, nor is it a mere subterfuge
to which resort may be had in order to avoid doing a disagreeable thing,
but it is such a doubt as reasonable men may entertain, after a careful and
honest review and consideration of the evidence; it must be founded in
reason, and must survive the test of reasoning or the mental process of a
reasonable examination.

(Argued May 5, 1897; decided May 14, 1897.)

APPEAL from a judgment of the Supreme Court, rendered
December 22, 1896, at a Criminal Trial Term in the county of
Westchester, on the verdict of a jury convicting the defend-
ant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*David H. Hunt* for appellant.

*George C. Andrews* for respondent.   The verdict was
abundantly supported by the evidence, and there is no possi-
ble ground for the claim that it was against the weight of the
evidence.   (*People* v. *Conroy,* 97 N. Y. 62; *People* v.
*Cignarale,* 110 N. Y. 27; *People* v. *Kerrigan,* 147 N. Y. 210;
*People* v. *Sliney,* 137 N. Y. 570.)   No error was committed
in the proceedings upon the trial to the prejudice of the
defendant.   (*People* v. *Jones,* 99 N. Y. 667; *Jefferds* v.
*People,* 5 Park. 522; *People* v. *Kemmler,* 119 N. Y. 580;
*People* v. *Menisci,* 12 N. Y. S. R. 719; *People* v. *Chapleau,*
121 N. Y. 266; *Murphy* v. *People,* 63 N. Y. 591; *Fralich*
v. *People,* 65 Barb. 48; *Greenfield* v. *People,* 85 N. Y. 76;
*People* v. *Taylor,* 101 N. Y. 608; *People* v. *Druse,* 103 N.
Y. 655; *People* v. *Wentz,* 37 N. Y. 303; *People* v. *Cassidy,*
39 N. Y. S. R. 27; *People* v. *Hartung,* 4 Park. 319.)

BARTLETT, J.   The defendant has been convicted of murder
in the first degree for killing his wife on the 30th day of

August, 1895, at the town of Harrison, in the county of Westchester.

There is no material dispute as to the facts, save as the defendant's testimony contradicts in almost every particular the story as told by the array of witnesses produced on behalf of the People.

The counsel for the defendant argued but one question of law, which was based upon an alleged error of the learned trial judge in his charge to the jury when defining a reasonable doubt, which would entitle the defendant to an acquittal.

A brief narration of the facts, as established at the trial, will render clear the situation confronting the jury at the time the judge delivered his charge.

This defendant is a colored man of bad reputation; he served a term in state prison for robbery; he has been twice committed to the county jail for beating his wife and once or more for drunkenness.

At the time of the homicide the defendant had been sixteen years married to the deceased; she had borne him nine children, five of whom were living at the time of her death, one being a babe eight or nine months old.

The defendant was shown to have been of a quarrelsome and brutal disposition, and during a period of nearly three months immediately preceding the murder, he twice threatened to kill his wife, the last occasion being on the Sunday before the tragedy, which occurred on Friday.

The character of the wife is not attacked in any way, and so far as this record discloses, she faithfully discharged the duties of wife and mother.

On the morning of the 30th of August, 1895, at about eleven o'clock Mrs. Barker was at the house of a neighbor, Mrs. Brooks, located about five hundred feet north of her own residence. While there the defendant followed her, unarmed, and entered the house in the absence of Mrs. Brooks, but remained only a short time; he went back to his own home and in a few moments returned with a shot gun in his hand; his wife sought refuge in an upper room of the house, but

defendant pursued her, a scuffle was heard and almost immediately he followed her closely down the stairs and out of the house, apparently pushing her along and compelling her to leave the premises.

When they reached the yard they met Mrs. Elsie Hobbie, a neighbor, and a sister of the defendant. The deceased immediately threw her arms about her as if seeking protection, and at the same time Mrs. Hobbie grasped the defendant's shoulder or arm and said to him, " don't."

The defendant struggled to free himself from the grasp of his sister, and in the meantime the deceased fled toward the house of Mrs. Hobbie, which was near at hand. The defendant speedily succeeded in breaking away from his sister; at that moment the deceased was between twenty and thirty feet distant when he raised his shot gun and fired the charge into her back causing a wound about three or four inches one way by two or three inches the other, and passing through the right lung, carrying away in its course the seventh and eighth ribs. This injury was sufficient to cause death in a few moments.

The defendant, while his wife was lying on the ground after receiving the fatal wound, walked over to her and taking a spade struck her a severe blow with it on the side of the head, exclaiming that he had killed her and was glad of it.

The shooting and the events immediately prior thereto were seen and sworn to by a number of witnesses.

The facts that defendant struck his wife with a spade on the side of the head after she had received the gunshot wound and his subsequent remark were proved by only one witness, but the autopsy revealed an incised wound over the right eye which might have been caused by the spade and possibly by her fall to the ground after she was shot. The evidence was properly submitted to the jury.

The defendant disappeared from the scene before the officers of the law arrived, and was a fugitive from justice some nine months before he was apprehended at Nyack by the chief of police of that place. Defendant had in the interval

been in Boston and Florida, and when placed under arrest admitted his guilt to two officers on different occasions, and to one of them expressed satisfaction that he had been arrested.

It is unnecessary to examine in detail the story of defendant on the witness stand. If he told the truth a half dozen witnesses at least who were sworn by the People committed perjury. His version of the transaction was substantially to the effect that on the morning of the homicide his wife, when leaving home to call on Mrs. Brooks, informed him she would return at once ; he waited a half hour or more and as the baby needed her attention and he wished to return a shot gun he had borrowed from one Archer, who lived some two miles away, he took the gun and went up to Mrs. Brooks' house to ask his wife to return home while he proceeded on his errand; he met Mrs. Brooks, his sister, Mrs. Hobbie, and two or three other women, and some of them denied his wife was in the Brooks house, but he saw her at an upper window, and she told him she was locked in, and that he went up and released her; that on coming down stairs with his wife he picked up his gun and they walked outside, when his sister "grabbed" and "clinched" him, and the other women joined in the struggle, and in the midst of it the gun was accidentally discharged.

It suffices to say that this part of his story is incoherent, improbable and contradicted by all the eye-witnesses who took the stand.

The fact is that on the Sunday before the murder he went to Archer's house, where his wife had been working for some days, demanded in the most violent manner that she should return home, seized Archer's shot gun, threatened the lives of both Archer and his own wife, and compelled the latter to march before him to their home, some two miles distant, he retaining possession of the gun, Archer testifying that when they left his house defendant had both barrels cocked.

The trial judge, in charging the jury on the subject of reasonable doubt, said :

" A reasonable doubt, gentlemen, is not a mere whim, guess or surmise ; nor is it a mere subterfuge to which resort may be had in order to avoid doing a disagreeable thing ; but it is such a doubt as reasonable men may entertain, after a careful and honest review and consideration of the evidence in the case. It is a doubt founded in reason and coming from reason, or, as the learned counsel for the defense has well expressed it, a doubt coming from reason and which survives reason."

No exception was taken to this part of the charge, but the defendant's counsel now insists that it is impossible for legal doubt to exist in any case within the definition given to the jury ; that the jury were directed in effect to consider the evidence, and that unless the defense absolutely satisfied the mind of the innocence of the accused they must convict.

While the portion of the charge referred to is not open to this criticism, and contains in the first sentence an accurate legal definition of reasonable doubt, it would have been only fair to the trial judge for defendant's counsel to have pointed out by exception any part of the charge that was deemed to be inaccurate or obscure, so that it might have been corrected in the presence of the jury.

As we are at liberty to examine questions of law in capital cases, even if not raised by proper exceptions, we will consider the last sentence in the quotation made from the charge, which, upon the argument, was made the subject of severe criticism by defendant's counsel.

It reads : " It is a doubt founded in reason and coming from reason, or, as the learned counsel for the defense has well expressed it, a doubt coming from reason and which survives reason."

It must be admitted that this sentence lacks clearness of expression, but it is quite obvious that the idea sought to be conveyed is, that a reasonable doubt must be founded in reason, and must survive the test of reasoning or the mental process of a reasonable examination.

Taken in connection with the sentence which preceded

it, and already quoted, we are of opinion that the jury were sufficiently instructed upon the question of reasonable doubt.

The judgment of conviction should be affirmed and the record remitted to the Supreme Court to carry out the sentence.

All concur.

Judgment affirmed.