Jambs E. Carroll,
Acting City Judge. This is a criminal prosecution for operating a motor vehicle while in an intoxicated condition, pursuant to subdivision 5 of section 70 of the Vehicle and Traffic Law. The defendant was arrested early in the morning of February 7, 1960; his counsel appeared in court on February 11, 1960, pursuant to section 297 of the Code of Criminal Procedure. Trial was set for February 18, 1960, 9:00 a.m. and the defendant at that time appeared in court and was duly arraigned; the defendant personally waived the right to a jury trial and requested that the court alone try him. The trial was commenced immediately after the arraignment.
The People’s case consisted of the following: Officer John R. Maneri, Joseph Thompson, Jr., Dr. Arthur J. Robbins .and Patrolman Anthony Olivo.
Patrolman Maneri stated that on February 7, 1960 at about 2:10 a.m. he was in a squad car which was parked in front of the Colonial Theatre, Main Street, Poughkeepsie, N. Y., headed in an easterly direction when he heard a crash to the west of him. He got out of the squad car and looked in the direction of the noise and observed a De Soto automobile traveling east, cross the center of the road, travel on its left-hand side of the road, come back to its proper lane and came halting to a stop behind an eastbound car waiting for a red traffic signal light. He further stated that he had halted this vehicle but had to jump out of its way in order to avoid getting hit.
Patrolman Maneri further stated that when he got to the driver’s side of the car, he observed the defendant behind the steering wheel. He spoke to the defendant but the defendant did not say anything when he asked him to get out. The patrolman further related that the defendant had difficulty in getting out of the car; that when he got out he fell and the witness had to help him to his feet, and that as he helped him to his feet he smelled alcohol on the defendant’s breath. The defendant was unable to walk without assistance to the police station as he was unsteady and the witness had to help him.
The patrolman related that the defendant’s eyes were half closed, his speech incoherent. At the police station at about 2:30 to 2:35 a.m. the witness watched Dr. Robbins examine the defendant. The defendant’s shirttails were out at the front of *801 his pants, his tie was disarrayed, that he could not perform the Romberg test, the finger-to-nose test, and he thought he was in the City of Kingston, N. T. In the witness’ opinion, the defendant was intoxicated. The defendant refused to submit to a blood test.
The observations of Officer Maneri as to the physical condition and appearance were substantially corroborated by the testimony of Officer Olivo, Dr. Robbins, and the complainant Joseph Thompson, whose parked car was struck and damaged by the defendant’s vehicle.
At this juncture, it should be pointed out that the People’s examining physician, Dr. Robbins, on cross-examination by defendant’s counsel stated that Norisodrine Sulphate and Epenephrine Sulphate were nearly the same pharmaceutical preparation; and that both contained adrenalin. He further stated that these drugs could affect co-ordination and that an overdosage would make a person unstable and dizzy. He could not state to what extent these drugs could impair a person, as the amount of application, the time of the application and the individual’s general physical health all entered into the picture.
The defense witnesses, Dr. Paul M. Schwartz, Dr. Henry F. Kreckman and Dr. Gilbert Lehv, all testified that the defendant had been afflicted with asthma and that they were personally acquainted with his condition. They all stated that the preparations Norisodrine Sulphate (Abbott Laboratory); Epenephrine Sulphate (U. S. P. formula made by all drug houses); and Adrenalin (Burroughs Welcome) all affect the capillary system of the body and cause constriction of the blood vessels of the brain (and especially where the patient has high blood pressure; the defendant’s blood pressure being 200/120 on February 9, 1960). The doctors further were all of the opinion an over-dosage of the aforesaid drugs would cause lack of co-ordination and all the other symptoms of intoxication. It was further testified that any one of the drugs or a combination of aE of these drugs were accumulative in effect.
The defendant also produced witnesses as to his behavior earlier in the evening from 6:00 p.m. to midnight on February 6, viz.: Dr. Henry F. Kreckman, Mrs. Kreckman, Clifford Merritt and Henry Bollinger, and the defendant’s wife. They aE stated that his behavior was proper and normal.
The witnesses Mrs. Kreckman and Mrs. Butts stated that the defendant took two doses of drugs, one immediately before leaving the Kreckman’s home after midnight.
The defendant stated on the day in question he was seriously affected by his asthma and the evidence of others corroborate *802 this. In the six hours at the Kreckman house he had three rye highballs and one glass of wine, plus a full meal. He states on the day in question four to five applications of the aforesaid drugs before six and one during the evening. His wife testified that she saw him take a second at midnight.
The defendant remembers giving out bridge prizes and the next thing he remembered was being in the police station.
There was no rebuttal by the People.
“ "Whoever operates a motor vehicle or motor cycle while in an intoxicated condition shall be guilty of a misdemeanor.” (Vehicle and Traffic Law, § 70, subd. 5.)
Subdivision 5 of section 70 provides: “ The court may admit evidence of the amount of alcohol in the defendant’s blood taken within two hours of the time of the arrest, if shown by medical or chemical analysis of his breath, blood, urine or saliva. For the purpose of this section (a) evidence that there was, at the time, five-hundredths of one per centum, or less, by weight of alcohol in his blood, is prima facie evidence that the defendant was not in an intoxicated condition; (b) evidence that there was, at the time, more than five-hundredths of one per centum and less than fifteen-hundredths of one per centum by weight of alcohol in his blood is relative evidence, but is not to be given prima facie effect. * * * (e) evidence that there was, at the time, fifteen-hundredths of one per centum, or more * * * may be admitted as prima facie evidence that the defendant was in an intoxicated condition.”
Section 71-a of the Vehicle and Traffic Law provides for chemical tests, viz.: breath, blood, urine and saliva. This section specifically provides that “such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical tests the tests shall not be given but the commissioner [of Motor Vehicles] shall revoke his license or permit to drive ”.
Subdivision 2 of said section further provides that the defendant shall be informed of the results.
Subdivision 3 provides that only a police physician can withdraw blood for the purpose of determining alcoholic content.
The limitation of police physician shall not apply to urine, saliva or breath specimen.
Subdivision 4 of this section provides that the person tested shall be permitted to have a physician of his own choosing administer a chemical test in addition to the one conducted under the direction of the police officer. With regard to the defendant’s refusal to take a blood test: “ The right of the people to be secure in their persons, houses, papers and effects, against *803 unreasonable searches and seizures, shall not be violated ”. (N. Y. Const.," art. I, § 12.)
The only way section 70 (subd. 5, par. second) and section 71-a can be construed constitutionally is on the basis that the test be voluntary. (Matter of Schutt v. Macduff, 205 Misc. 43.)
I do not mean to imply that the Commissioner of Motor Vehicles does not have the right to revoke the defendant’s license for the refusal to submit to a chemical test. (Matter of Anderson v. Macduff, 208 Misc. 271.)
The Commissioner of Motor Vehicles deals solely with the licensing aspect of the aforesaid statutes and not with the criminal aspects.
It should be noted that where a defendant refuses to take a chemical test, the Commissioner of Motor Vehicles can revoke an operator’s license on “a sworn report of the police officer that he had reasonable grounds to believe such arrested person to have been driving in an intoxicated condition and that said person had refused to submit to such test ’ ’, and any subsequent hearing had before the Commissioner of Motor Vehicles is not in accordance with rules of evidence or in accordance with the burden of proof as in a criminal proceeding.
The Commissioner of Motor Vehicles’i( burden ” is “ reasonable grounds.” (In this court we are dealing with a criminal prosecution, that is a misdemeanor; the proof must be submitted in accordance with the laws of evidence of the State of New York and the burden of proof is beyond a reasonable doubt.) In a criminal prosecution, the guilt of the defendant must be established beyond a reasonable doubt (Code Crim. Pro., § 389).
In all criminal prosecutions, the burden of proof rests upon the People and remains there throughout the trial. This is true in every case, irrespective of the nature of the defense. (People v. Downs, 123 N. Y. 558.)
The burden of proof on the People applies to every essential element of the crime.
The rule in criminal cases that the defendant is entitled to the benefit of a reasonable doubt applies not only to the case made by the prosecution, but to any defense interposed. (People v. Downs, 123 N. Y. 558, supra.)
The burden of proof is on the prosecution to establish the guilt of the defendant beyond a reasonable doubt. This burden of proof applies with respect to every issue raised at the trial, including rebuttal of defendant’s defense. (People v. Elmore, 277 N. Y. 397; People v. Downs, 123 N. Y. 558, supra; People v. Egnor, 175 N. Y. 419.)
*804 In this particular case, we are confronted with a problem, which has long been a source of anguish of the courts and law enforcement officials. An enumeration of all the cases would be of little consolation, either to the court in arriving at its decision, to the People, or to the defendant. “ A reasonable doubt ” has been defined as “ such a doubt as reasonable men may entertain, after a careful and honest review and consideration of the evidence in the case.” (People v. Barker, 153 N. Y. 111, 115; People v. Guidici, 100 N. Y. 503.)
In determining what constitutes a reasonable doubt, the instant court has inquired as to what constituted reasonable doubt in the minds of men, acknowledged as “ reasonable ”.
I would like to quote from the Joint Legislative Committee Report on motor vehicles, submitted to the Governor on April 19, 1953, wherein the committee on discussing the instant problem has considered similar cases in New York and elsewhere throughout the United States and made the following observations (N. Y. Leg. Doc., 1953, No. 25, pp. 11-12):
“ The successful prosecution of the drunken driver requires that the law enforcement officers be able to identify him beyond a reasonable doubt. The method of indentification presently used in most communities is totally inadequate. It usually takes the form of general observations by police officers and witnesses. These witnesses are asked to testify as to the presence or absence of the accepted signs of intoxication, the odor of the breath, slurred speech, hand tremors and clumsiness of movement. Alcoholism being a well-known disorder, it may be asked why anything more than this is necessary to prove that an individual has imbibed too freely. The answer is that these tests are not conclusive, since the common signs of intoxication have often been used to falsely accuse a sober person. A person’s appearance and actions may be clearly abnormal, yet the abnormality may not be due to alcohol. The test for odor of liquor on the breath is unsatisfactory for the breath odor observed is really the flavoring matter of the liquor and the strength of the odor depends not only on the amount of the alcohol consumed, but also on the particular beverage which happened to have been used. Moreover, recent experiments with chlorophyll indicate that it is possible to produce intoxicating beverages which can be imbibed without any odor in the breath; Impairment of speech and locomotion may be due to any number of factors, other than excessive alcohol. It is obviously difficult for the arresting officer to .know the accused’s usual behavior. .He often cannot tell, therefore, whether the *805 accused’s behavior at the time of apprehension is usual or unusual. This does not mean that such common signs of intoxication should be disregarded. It does indicate that these signs, without any further evidence, do not show positively whether the individual was under the influence of intoxicating liquors. As a result, juries and judges are often loath to convict the guilty.” (Italics supplied.)
Further in the report it appears “ There are approximately 60 pathological conditions that have symptoms similar to those of alcoholism. An apparent alcoholic condition might not be due to alcohol at all. It may be merely the result of injury or sickness. People taking medicines often act as if they had been imbibing too freely. The diabetic in need of, or with an overdose of, insulin may act as if he were intoxicated. Injuries to the nervous system or a concussion of the brain may create alcoholic symptoms. Hence it is evident that not even a physician— on observation alone — is able to accurately diagnose intoxication. How then can a law enforcement officer without any medical training be expected to mahe a determination as to intoxication which can be supported in court by a finding beyond a reasonable doubt? The answer is, obviously, that he cannot do so without the aid of chemical tests ” (p. 14; italics supplied).
In People v. Weaver (188 App. Div. 395, 398) the Appellate Division, Third Department, rightly observes: “ It is contended that the defendant operated his automobile recklessly on the highway and that this is some evidence of intoxication. It is common knowledge that sober men too frequently drive their automobiles at a rapid speed and that they deviate from the extreme right of the highway and sometimes experience collisions. Intoxication cannot legitimately be inferred from these circumstances alone.”
It has been repeatedly held that evidence of liquor on defendant’s breath is insufficient in itself to establish intoxication. (People v. King, 28 N. Y. S. 2d 460; People v. Fox, 256 App. Div. 578.)
Also, it has been held that where part of the defendant’s condition could be attributed to shock and injuries from a collision, the crime of driving while intoxicated was not proved beyond a reasonable doubt. (People v. Merna, 233 App. Div. 739; People v. Betts, 142 Misc. 240.) In People v. King (28 N. Y. S. 2d 460, supra) it was held defendant’s condition was due to ‘ ‘ excitement and confusion ’ ’ of accident.
It has also been held that where, from the officer’s observations alone at the scene of the accident he drew his conclusion *806 that the defendant was unfit to drive an automobile properly, there was insufficient to warrant a conviction. (People v. Brewster, 252 App. Div. 877.)
‘ ‘ Intoxication ’ ’ within the purview of the statute means intoxication due to imbibing alcohol too freely (People v. Koch, 250 App. Div. 623). It is to be noted that the sections provide chemical analysis for alcohol. The court feels that if the defendant voluntarily consumed narcotic drug or chemical which deprived him of his faculties or was knowingly affected with a physical condition, such as epileptic fits, etc., and got into a car and drove it on the public highway he would be guilty of reckless driving (Vehicle and Traffic Law, § 58), criminal negligence (Penal Law, § 1053-a), within the purview of People v. Eckert (2 N Y 2d 126, 131), and People v. Decima (2 N Y 2d 133).
A lay person is qualified to give testimony as to intoxication. (People v. Belcher, 302 N. Y. 529, and a host of others.)
His observations that are made are the following: odor of breath; color of face: eyes; pupils; clothes; attitude; excessive hiccoughing and belching; walk; finger co-ordination test; picking up coins; speech, etc.
Is a lay witness’ testimony as to intoxication “Direct evidence ” or “ circumstantial evidence ’ ’ Í
“ Direct evidence ” is that evidence which tends to establish one or more of the principal facts in issue without the intervention of any other fact. “ ‘ Evidence is direct and positive when the very facts in dispute are communicated by those who have the actual knowledge of them by means of their senses ’ ’ ’. (Pease v. Smith, 61 N. Y. 477, 484-485.)
‘ ‘ Circumstantial evidence ’ ’ is evidence of a collateral fact, that is, of a fact other than of the fact in issue, from which, either alone or with other collateral facts, the fact in issue may be properly inferred. (People v. Bretagna, 298 N. Y. 323, 325.)
‘1 The word ‘ intoxication ’ is not defined by the statute. For its meaning, we must, therefore, resort to its proper use in the ordinary speech of people. Lexicographers are not in entire agreement. # * * To some men it means being under the influence of an intoxicant to such an extent to render one helpless; while others speak of a person as intoxicated when he is but slightly under such influence ”. (People v. Weaver, 188 App. Div. 395, 399, supra.)
In effect, the lay witnesses’ testimony as to intoxication is opinioned evidence. What the law permits is a person experienced in living and everyday affairs to express an opinion; he *807 does not have to have any special skill. (People v. Eastwood, 14 N. Y. 562.)
It used to be that the proper method for interrogating a witness as to the intoxicated condition of a person was to ask the witness whether his actions were those of an intoxicated person or whether his actions were those of a sober person.
This format is still applicable when a witness is asked whether a person’s action impressed him as rational or irrational. (Holcomb v. Holcomb, 95 N. Y. 316; People v. Hill, 195 N. Y. 16; Weinberg v. Weinberg, 255 App. Div. 366.)
If a witness observes a man walk down the street, he might notice that the man staggers and emits an odor of alcohol. There could be, at least, two logical possibilities that could come to the mind of the observer: 1. That the subject is intoxicated, and 2. That the man has a short leg and has strong shaving lotion, etc.
I hold that ‘ ‘ Intoxication by imbibing in alcoholic beverages ’ ’ is the fact at issue. That the testimony of the lay witnesses as to the defendant’s condition and appearance is circumstantial evidence as to the fact at issue, though it may be direct evidence as to the defendant’s appearance. Their conclusion of his intoxication, legally speaking, is based upon circumstantial evidence; and, therefore, cannot be considered as direct evidence.
I likewise hold that under the circumstances, the opinion of Dr. Bobbins is based on circumstantial evidence, although his opinion has more weight due to his scientific training and qualifications.
The only direct evidence we could have to determine the fact at issue would be the chemical test and that being absent this decision has to be based upon circumstantial evidence. Under the circumstances, where two or more reasonable inferences could be made, one consistent with the defendant’s guilt, and the other consistent with the defendant’s innocence, the People have failed to sustain their burden of proof. (People v. Di Landri, 250 App. Div. 52; People v. Carter, 5 Misc 2d 214, 215.)
It is a well-settled rule in New York that where the prosecution relies wholly on circumstantial evidence to establish the guilt of the accused, the circumstances must be satisfactorily established and must be of such a character as, if true, to exclude to a moral certainty every other hypothesis except that of the accused’s guilt. (People v. Weiss, 290 N. Y. 160; People v. Woltering, 275 N. Y. 51.) Not only must all of the circumstances be consistent with and point to defendant’s guilt u but they must be inconsistent with his innocence ’ ’. (People v. Fitzgerald, 156 N. Y. 253, 258.)
*808 For the reasons set forth, I feel that the defendant’s condition was due to an inadvertent overdose of drugs, and not to excessive drinking of alcoholic beverages. I, therefore, find the defendant not guilty.