David O. Boehm, J.
The defendant appeals from two judgments of conviction of the crime of driving while intoxicated, the i|rst of which was entered in the Town of Brighton Justice Court on May 14, 1973 after a trial commencing March 8, 1973, and the second of which was entered in the Town of Henrietta Justice Court on May 24, 1973 after a trial commencing April 9, 1973. In the second trial the defendant was also convicted of a failure to keep right.
A number of issues have been raised on each appeal, but common to both appeals are the constitutional issues of lack of due process and denial of equal protection of the law. Unexpressed but inherent in both is also the constitutional right to trial by jury.
*549 Defendant argues that since the jury trials which resulted in his convictions were held at night, he was denied equal protection of the law as guaranteed by the Fourteenth Amendment of the Federal Constitution and section 11 of article I of the New York State Constitution. While there is no precise definition of the phrase “ equal protection of the law ” and while it is not always regarded as an absolute right (Matter of Cohen v. Starke, 269 App. Div. 256), it does bar action which is palpably arbitrary or unduly discriminatory (Harman v. Board of Educ. of City of N. Y., 300 N. Y. 21).
The essence of the right is that all persons similarly situated be treated alike and that so long as the establishment of classes of people is reasonable and not arbitrary there is no such denial (Aerated Prods. Co. v. Godfrey, 290 N. Y. 92). The mere fact, however, that individuals are treated differently because they are in different classes, as in the case at bar, does not, of itself, create unconstitutional discrimination (Matter of Koster v. Holz, 3 N Y 2d 639).
The defendant points out that similarly charged defendants in the City Court of Rochester and like courts with equivalent jurisdiction are tried during the day before jurors who are not otherwise engaged for the period that they sit. Therefore, compelling him to be tried in a town court before jurors who have worked all day and are obliged to sit and deliberate until the early morning hours not only denies him equal protection of the law but is also a violation of due process in contravention of the Fifth and Fourteenth Amendments of the United States Constitution and section 6 of article I of the New York State Constitution.
The Brighton trial commenced at 8:09 p.m. with the selection of the jury. At 10:05 p.m. a recess was called following the testimony of the first witness. Eight minutes later the court reconvened and the ease continued until 11:20 p.m., at which time the People rested and defense motions were heard. The defense put in its proof until 12:48 a.m., then rested and motions were made. After a six-minute recess summations began. The jury began its deliberations at 1:25 a.m. and returned for instructions at 3:00 a.m. They resumed deliberating at 3:03 a.m. and returned a verdict of guilty at 3:07 a.m.
The record contains no indication that the defense raised any objection to the jury beginning its deliberations so early in the morning.
The Henrietta trial began at 8:00 p.m. with the prosecution completing its proof at 11:35 p.m. The defense lasted until *550 12:50 a.m., at which time there was a five-minute recess. The summations and charge to the jury were completed at 1:30 a.m. At 1:45 a.m. the jury returned for further instructions, resumed deliberations 10 minutes later and returned with its verdict at 2:50 a.m. Counsel for the defense pointed out the lateness of the hour at the end of the People’s case and, after the summation and charge, asked that the jury be sent home and brought back at a later date.
Because of the importance of the questions raised, the Monroe County Bar Association requested and was permitted to file a brief as amicus curiae.
The defendant argues in his briefs that a trial at night is unconstitutional per se, because the jurors must sit after a hard day’s work, are worn, tired, anxious to return to their homes and are, therefore, unable to render an impartial verdict (citing People v. Rogers, 205 Misc. 1106 and People v. Murphy, 42 Misc 2d 413). Furthermore, he argues that a jury’s deliberations cannot be calm and untroubled if a trial is held at night.
This attack upon one aspect of the operations of our Town Justice Courts, which has been in effect for many years, has wide-ranging implications. This court is unwilling to do away with night jury trials in Town Justice Courts without compelling reasons to show that the practice itself is violative of one’s rights to a fair trial. The arguments of defense counsel do not compel the conclusion that the practice is per se unconstitutional and, indeed, the Bar Association’s view is to the contrary.
A few courts have held, with good reason, that some trials which continue into the early morning hours are unconstitutional. Thus, in People v. Murphy (42 Misc 2d 413, supra) selection of a jury began at 7:00 p.m. and a verdict of guilty on all charges was rendered at 6:55 a.m. the next day. In reversing, the judgment of conviction, the court stated (p. 415): “ there was here lacking that degree of serenity and calmness so necessary in a judicial proceeding to assure to both the accused and the People alike a fair and impartial trial in fact and law.”
A similar result was reached in People v. Rubin (N. Y. L. J., May 18, 1959, p. 15, col. 6).
Accordingly, it is for the court to decide from the circumstances of each case whether a defendant has been afforded a fair trial. As the Bar Association appropriately points out in its brief: ‘1 All the people involved; judge, jury, attorneys and witnesses start out presumably dulled by the day’s labors and certainly in some anxiety that the case will not last until dawn, robbing them of rest before the morrow’s work day. Hence, *551 the trial judge must be on the alert and make sure either sua sponte or upon application of the other parties that a continuance is neither needed nór necessary for- the proper administration of justice. This he should do by making inquiries of counsel and the jury, as to their ability to carry on, the availability of all parties and witnesses at a future adjourned date, the number of witnesses yet to testify, the complexity of the case etc. ’ ’
The decision in the Brighton appeal pivots on the fact that at no time did the defense in that trial advance a constitutional argument against the lateness of the hour or otherwise request that the trial be adjourned. Accordingly, the constitutional question may not now be raised for the first time (Beck v. Washington, 369 U. S. 541, rehearing den. 370 U. S. 965; People v. Sieke, 222 N. Y. 611). The cases cited by the defendant in his supplemental memorandum turn more on jurisdiction than on constitutionality. Consequently, the constitutional issue in the Brighton trial is not preserved for review by this court.
However, this same situation does not exist with the Henrietta trial where the defendant did raise the issue of the lateness of the hour several times, thereby placing the constitutional question squarely before the court. In addition, the defendant has submitted an affidavit by the jury foreman to the effect that the late hour contributed to his voting for a conviction.
As a general rule, a juror is not competent to impeach his verdict (People v. Sprague, 217 N. Y. 373; McDonald v. Pless, 238 U. S. 264; and see the Fourth Department’s most recent condemnation of this practice in People v. Streiff, 41 A D 2d 259, 272). But in People v. De Lucia (20 N Y 2d 275, 279) the Court of Appeals held: “ Statements concerning outside influences on a jury, however, occurring less frequently and more susceptible to adequate proof, should be admissible to show that the defendant was prejudiced, for here the danger to our jury system is minimal compared with the more easily proven prejudice to the defendant.”
Here the juror’s affidavit is admissible to corroborate what must have been otherwise apparent, that at least one of the jurors was exhausted when he voted to convict the defendant. The Trial Judge might well have ascertained upon inquiry of the jury that some of the members of the panel were tired and hardly in proper mental or physical condition to render a deliberately considered fair and impartial verdict.
The inevitable and unfortunate consequence is that the defendant’s right to trial by jury was so impaired as to amount to a *552 constitutional violation. The Henrietta judgment of conviction is, therefore, reversed and a new trial granted.
The defendant has raised a number of other points which he claims constitute reversible error in connection with the Brighton trial.
The first relates to the quality of the evidence offered by the prosecution to establish guilt beyond a reasonable doubt. The basis for charging the defendant with driving while intoxicated was the testimony of three witnesses, two arresting officers and a nurse at the hospital, who observed the defendant’s behavior and concluded that he was intoxicated. The defendant refused to take the breathalyzer test and, for reasons not disclosed in the record, a blood test was not made at the hospital.
Intoxication is a conclusion reached upon circumstantial evidence after making observations of the person’s behavior (People v. Butts, 21 Misc 2d 799). Where a crime is to be proven by circumstantial evidence the People must establish facts which are consistent with guilt and inconsistent with innocence (People v. Woltering, 275 N. Y. 51; People v. Bennett, 49 N. Y. 137). The record discloses that this was done and a finding of guilt is fully supported by the evidence.
Nor was it error to permit one of the civilian witnesses to express an opinion as to the condition of the defendant. Opinion evidence as to intoxication may be given by a nonexpert witness as falling within that general area of knowledge and experience1 which is so common that it becomes a matter of existing physical fact (Richardson, Evidence [10th ed.], § 364, p. 332).
Another point raised involves the extent of cross-examination of the defendant by the District Attorney into the defendant’s refusal to take a blood test at the hospital. On direct examination the defendant testified “ and they [police] said, will you take a breathalyzer test? I said, breathalyzer, no, but let’s go down to the hospital.” During cross-examination defense counsel strenuously objected to questions relating to the taking of a blood test. The court ruled that the door had been opened on direct.
It is well settled that the extent of cross-examination lies within the discretion of the Trial Judge (People v. Tice, 131 N. Y. 651; People v. Sorge, 301 N. Y. 198, 202). It does not appear that the Trial Judge here abused his discretion in this regard. Moreover, with respect to the eliciting of testimony regarding refusal to take a blood test, Judge Jasen, in his concurring opinion in People v. Paddock (29 N Y 2d 504, 506) pointed out: 11 However, the strong policy evidenced to remove *553 the drunken driver from the road means that such a refusal will result in a license revocation. Consequently, this ‘ right ’ of refusal is not really a right in the sense of a fundamental personal privilege, but, rather, was merely an accommodation to avoid a distasteful struggle to forcibly take blood. Since the statute itself equates a refusal with guilt (by revoking the driver’s license) and expresses a strong policy to protect the public from the threat of drunken driving, there appears to be no compelling reason to forbid comment on a person’s refusal to take a blood test.” (See, also, Schmerber v. California, 384 U. S. 757.)
In his summation, the prosecuting attorney commented upon the defendant’s “ refusal ” to take either a breathalyzer or a blood test. The defendant contends that it was reversible error for him to do so. "While the defendant’s testimony was not specific regarding his refusal to take either test, the fact that he had said “ no ” to the breathalyzer test and admitted that a blood test was not taken may have given rise to a reasonable and permissible inference of such refusal. Admittedly, the question is a close one but, even if error, the remarks were not so prejudicial as to deprive the defendant of a fair trial, particularly in view of the quality of the evidence supporting the guilty verdict.
The defendant also claims it was reversible error to permit the prosecuting attorney to interrogate the defendant regarding a prior incident of intoxication. The extent of such cross-examination is within the proper exercise of discretion of the Trial Judge provided it falls within well-settled legal safeguards (CPL 60.40; People v. Sorge, 301 N. Y. 198, supra; People v. Schwartzman, 24 N Y 2d 241; see People v. Gray, 41 A D 2d 125, for such cross-examination regarding conviction of a violation).
As the Court of Appeals stated in People v. Schwartzman (24 N Y 2d 241, 244, supra): “ The nature and extent of cross-examination is subject to the sound discretion of the Trial Judge (Langley v. Wadsworth, 99 N. Y. 61, 63). It is well settled that a defendant who chooses to testify may be cross-examined concerning any immoral, vicious, or criminal acts which have a bearing on his credibility as a witness. (People v. Webster, 139 N. Y. 73; Richardson, Evidence [9th ed.], § 510.) The offenses inquired into on cross-examination to impeach credibility need not be similar to the crime charged, and questions are not rendered improper merely because of their number provided they have some basis in fact and are asked in good faith. (People v. Sorge, 301 N. Y. 198, 200; People v. Alamo, 23 N Y 2d *554 630.) Nor does a negative response by a defendant preclude further inquiry by the prosecutor in a legitimate effort to cause the defendant to change his testimony. Otherwise, a ‘ witness would have it within his power to render futile most cross-examination. ’ (People v. Sorge, supra, p. 201.) ” These principles are directly applicable to the defendant’s argument and, therefore, it is clear there was no "abuse of discretion by the Trial Judge here, either.
Finally, defendant contends that the remarks of the Trial Judge during the course of the trial and the limitations he imposed upon defense counsel in his cross-examination constituted reversible error. There is nothing in the record to indicate bias upon the part of the Trial Judge or that, if such bias existed, it unjustly affected the result (Matter of Connolly v. Scudder, 222 App. Div. 591, mod. 222 App. Div. 604, revd. on other grounds 247 N. Y. 401). Similarly, it does not appear that the Trial Judge abused his discretion in limiting the scope of cross-examination of the People’s witnesses (People v. Tice, supra).
By reason of the foregoing, the judgment of conviction of the Brighton Town Court is affirmed.
One further comment is in order.
The majority of people base their knowledge of our lower criminal courts, so-called, particularly the Town Courts, upon their superficial and infrequent involvement with them. It is therefore essential that everyone who comes in contact with these courts, and this includes jurors as well as litigants, be convinced not only that there is actual justice but by the very appearance of justice. It is “ of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done.” (Rex v. Sussex Justices, ex parte McCarthy [1924], 1 K. B. 256, 259.)
But there is a large and growing body of opinion advocating the elimination, as an anachronism, of the Justices’ Courts. These venerable tribunals go back in an unbroken and illustrious tradition for at least seven centuries. Like the Grand Jury, a distinguished peer of even more ancient lineage, the Justice Court system continues to function with vitality and purpose, not only in this country but (also with lay Justices) in England as well. The Uniform Justice Court Act, passed on August 1, 1966, has given them a renewed infusion of youthful vigor.
However, nothing will hasten their demise faster or their relegation to emeritus status sooner than a popular feeling of disenchantment that they have run out their course and have *555 deteriorated into drumhead senility. It is essential that they continue to demonstrate their resilience and responsiveness to the needs of the times if they are to survive.
Toward this end, the Monroe County Bar Association has made a commendable contribution by its brief amicus curiae prepared by Charles F. Crimi, Esq., its president, J. Webb L. Sheehy, Esq., a member of the association’s Justice Court committee, a former Town Justice and a past president of the New York State Magistrates’ Association, and John La Duca, Esq., chairman of the association’s criminal justice section.
In its excellent brief, the Bar Association recommends that the following standards be established:
“ 1. Night jury trials should be scheduled for 7:30 p.m. and should be the only matters scheduled that evening;
“ 2. All jurors should be present by 7:30 p.m. ;
“ 3. Pretrial discussion as to disposition, evidentiary matters and probable length of trial should be completed no later than 7 p.m. on the evening of trial;
“ 4. Prior to and during the voir dire the jurors should be alerted to the possibility of the trial proceeding beyond midnight or of a continuance should the case be recessed at midnight, in order to ascertain availability or extent of inconvenience in either event;
“ 5. Upon proper application by counsel and sufficient showing following inquiry by the trial judge, the case should be recessed and continued to another date; and
“ 6. Jurors should be paid.”
These recommendations seem reasonable in scope and practicable in performance. Having come to know well many of the Town Justices over the years, I have developed a deep respect for their commitment to their responsibilities and their sincere desire to improve the quality of justice in the courts they serve. The above recommendations are therefore earnestly commended to their attention for study and possible implementation.