2012 WY 33

**In the Matter of the Wyoming Department of Transportation Driver's License Action Involving Brady L. MICHAELS, Licensee, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex. rel., DEPART-MENT OF TRANSPORTATION, Appellee (Respondent).**

No. S–11–0156.

Supreme Court of Wyoming.

March 6, 2012.

Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Donna A. Murray, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Brady L. Michaels was arrested for driving while under the influence of alcohol in violation of Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2009). The Wyoming Department of Transportation (the State) notified him that it was suspending his driver's license for ninety days. Mr. Michaels requested an administrative hearing. After the hearing, the Office of Administrative Hearings (OAH) upheld the suspension.

[¶ 2] Mr. Michaels appealed the suspension to the district court, which affirmed the OAH decision. He then appealed to this Court, claiming § 31–5–233(b) prohibits drinking and driving, his condition at the time of his arrest was the result of a diabetic ketoacidosis state not the result of drinking alcohol, therefore, the State did not meet its burden of proving that probable cause existed to believe he violated the statute.

[¶ 3] We hold as a matter of law that § 31–5–233(b) was intended to apply when a person drives or is in actual control of a motor vehicle after consuming alcohol beyond the legal limit or to a degree rendering him incapable of safely driving. Therefore, the

OAH's ruling that § 31–5–233(b) does not distinguish between alcohol concentration caused by consuming alcoholic beverages and alcohol concentration caused by some other factor is incorrect. However, we also hold that the State met its burden of proving that probable cause existed at the time of the arrest to believe that Mr. Michaels had violated § 31–5–233(b), and we affirm the OAH's order upholding the suspension of his driver's license.

## ISSUES

[¶ 4] The issues Mr. Michaels presents for this Court's determination are whether the OAH decision is in accordance with the law and, if so, whether it was supported by substantial evidence.

## FACTS

[¶ 5] On the evening of April 16, 2010, Wyoming Highway Patrol Trooper Rodney Miears was patrolling on U.S. Highway 20 in Big Horn County, Wyoming. At approximately 6 p.m., he observed a vehicle approaching him at a high rate of speed. His radar showed the vehicle was traveling 96 miles per hour in the posted 65 mile per hour zone. Trooper Miears pursued the vehicle, activating his flashing lights as he approached, and the vehicle pulled over. Trooper Miears pulled up behind the vehicle, got out of his patrol car and approached the driver's side window. He informed the occupant that he had stopped him for speeding. He requested a driver's license, proof of insurance and registration. According to the trooper's report, the occupant, Mr. Michaels, was difficult to understand, slurred his words and had watery, blood-shot eyes.

[¶ 6] Trooper Miears returned to his patrol car to fill out a citation for speeding. Mr. Michaels got out of his vehicle and approached the patrol car twice. The second time, Trooper Miears asked him if he had been drinking. Mr. Michaels responded, "no." Trooper Miears asked, "You haven't?" and Mr. Michaels again said, "no." Trooper Miears told him to get back in his vehicle. A few minutes later, Mr. Michaels got out of his vehicle again. A second trooper who arrived at the scene asked Mr. Michaels to stay in his vehicle, but Mr. Michaels continued to walk toward Trooper Miears' patrol car.

[¶ 7] The second trooper advised Mr. Michaels that Trooper Miears was going to have him perform field sobriety tests. Trooper Miears told Mr. Michaels that he could smell the odor of alcohol coming from him. He then had Mr. Michaels perform the sobriety tests, including the horizontal gaze nystagmus, walk and turn and one leg stand. Mr. Michaels failed the tests. The trooper administered a portable breath test which showed an alcohol concentration of .17%. A second test showed a .16% alcohol concentration. Trooper Miears arrested Mr. Michaels for driving while under the influence of alcohol in violation of § 31–5–233(b), which prohibits a person from driving if he has an alcohol concentration of 0.08% or more. He placed Mr. Michaels in the patrol car, gave him the implied consent advisement required under Wyo. Stat. Ann. § 31–6–102 (Lexis-Nexis 2009) and transported him to the Big Horn County jail. A third breath test given at the jail still showed a .16% alcohol concentration. Upon being advised of his right to have additional tests performed at his own expense, Mr. Michaels requested to be taken to the hospital for a blood test.[1] Trooper Miears also provided Mr. Michaels with written notice that his driver's license was being suspended for ninety days.

[¶ 8] Mr. Michaels subsequently made a written request for a contested case hearing before the OAH. A hearing was convened. As a preliminary matter, Mr. Michaels stated he would stipulate that Trooper Miears had probable cause to stop him for speeding, but

---

1. Mr. Michaels testified that he thought the blood drawn at the hospital would be tested and the results provided. When he attempted to obtain the results later for purposes of the license suspension hearing, he was incorrectly informed that the results had been destroyed. After the hearing, the State obtained a hospital laboratory report showing the blood test results and moved to re-open and supplement the record with the report. The OAH denied the motion on the ground that the State had an opportunity to supplement the record with additional evidence after Mr. Michaels' testimony and declined to do so.

contested whether probable cause existed to arrest him for violating § 31–5–233(b). For its case, the State relied on the certified record. Mr. Michaels called three witnesses: his physician, Dr. Joel Pull, who testified that Mr. Michaels suffered from Type I Diabetes and he believed Mr. Michaels was in a ketoacidosis[2] state on the night of his arrest, not under the influence of alcohol; his wife, Kristy Michaels, who testified that her husband quit drinking alcohol after he was diagnosed with Diabetes in 2009 and she did not observe him drinking nor did he smell like alcohol on the day of his arrest; and a co-worker, Nate Mattison, who also testified that Mr. Michaels had quit drinking and did not appear to be intoxicated on the day he was arrested. Mr. Michaels also testified that he had not consumed alcohol on the day he was arrested.

[¶ 9] After the hearing, the OAH issued its order upholding the suspension of Mr. Michaels' driver's license. In pertinent part, the OAH found and concluded as follows:

17. The evidence in this case clearly established Michaels was stopped for speeding 96 mph in a 65 mph zone. This is a traffic violation and provided probable cause to initiate a traffic stop.

18. The evidence in this case established Trooper Miears observed that Michaels had bloodshot and watery eyes, slurred speech, poor balance, the smell of an alcoholic beverage coming from his person and that Michaels was behaving erratically. This is probable cause to continue detention and determine if Michaels was under the influence. The record is clear that Michaels was not asked the preliminary questions concerning medical and physical conditions prior to submitting to

field sobriety maneuvers. As such, Trooper Miears was not aware Michaels was a diabetic until after Michaels had been arrested, booked into jail and submitted to a breath test. The evidence is also clear that Michaels was in a ketoacidosis state at the time the field sobriety maneuvers were administered and at the time chemical testing was performed. A person in a ketoacidosis state may exhibit signs of poor balance and slurred speech. This raises questions as to the validity of the Walk and Turn and One Leg Stand maneuvers and the results of those two maneuvers will not be considered by this Office. At the time Trooper Miears arrested Michaels he was aware Michaels smelled of alcohol, had bloodshot and watery eyes, had exhibited erratic behavior, had been speeding, showed six signs of impairment on the Horizontal Gaze Nystagmus and that Michaels had submitted to portable breath tests with results of 0.17 and 0.16. Based upon the information available to Trooper Miears, at the time of the arrest, he had probable cause to arrest Michaels for DWUI.

\* \* \* \*

21. Wyo. Stat. Ann. § 31–6–102(e)(LEXIS 2009) provides for a ninety day suspension if a person submits to a chemical test with an alcohol concentration of 0.08 percent or greater.

22. Alcohol concentration is defined by Wyo. Stat. Ann. § 31–5–233(a)(i)(LEXIS 2009) as the number of grams of alcohol per two hundred ten liters of breath.

23. Wyo. Stat. Ann. § 31–5–233(d)(LEXIS 2009) in part, provides that the fact a person is entitled to use con-

---

2. Diabetic ketoacidosis is described as follows:

People with type 1 diabetes do not have enough insulin, a hormone the body uses to break down sugar (glucose) in the blood for energy. When glucose is not available, fat is broken down instead.

As fats are broken down, acids called ketones build up in the blood and urine. In high levels, ketones are poisonous. This condition is known as ketoacidosis.

Blood glucose levels rise (usually higher than 300 mg/dL) because the liver makes glucose to try to combat the problem. However the cells cannot pull in that glucose without insulin.

Diabetic ketoacidosis is often the first sign of type 1 diabetes in people who do not yet have other symptoms. It can also occur in someone who has already been diagnosed with type 1 diabetes. Infection, injury, a serious illness, or surgery can lead to diabetic ketoacidosis in people with type 1 diabetes. Missing doses of insulin can also lead to ketoacidosis in people with diabetes.

Symptoms can include: deep, rapid breathing, dry skin and mouth, flushed face, fruity smelling breath, decreased consciousness, and dulled senses.

http://medlineplus.gov

trolled substances is not a defense to a charge of DWUI.

24. * * * The evidence in this case clearly established Michaels submitted to a properly administered breath test and the result was 0.16 percent [alcohol concentration]. The evidence reflected Michaels' [alcohol concentration] may have been the result of his ketoacidosis state caused by this diabetes. The statutes do not provide a distinction between [alcohol concentration] caused by consumption of alcoholic beverages and [alcohol concentration] caused by some other factor. Michaels submitted to a chemical test with a result of 0.08 percent or greater [alcohol concentration] and the proposed suspension action should be upheld.

Mr. Michaels appealed the OAH order to the district court, which affirmed. From the district court's order, he timely appealed to this Court.

### STANDARD OF REVIEW

[¶ 10] When an appeal is taken from a district court's review of an administrative agency's decision, we consider the case as if it had come directly from the agency, giving no deference to the district court's decision. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 118, ¶ 10, 259 P.3d 1161, 1164 (Wyo.2011); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] In applying § 16–3–114(c), we have said:

[W]e review the agency's findings of fact by applying the substantial evidence standard. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings."

. . . .

"We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law." [citations omitted]

*Middlemass,* ¶¶ 11, 13, 259 P.3d at 1164.

### DISCUSSION

[¶ 12] In his first claim, Mr. Michaels contends the OAH's findings and conclusions are not in accordance with the law. Specifically, he asserts the OAH incorrectly concluded the driving under the influence statutes do not distinguish between alcohol concentration created by consuming alcohol and alcohol concentration caused by some other factor. Mr. Michaels maintains the statutes were clearly intended to prohibit a person from driving after consuming substances containing alcohol and not to cover alcohol produced by the human body as occurs in a diabetic ketoacidosis state. Because the undisputed evidence showed that

he was in a diabetic ketoacidosis state caused by his diabetes, he asserts, the State did not meet its burden of proving that probable cause existed to believe he violated § 31–5–233(b).

 [¶ 13] Resolution of the issue Mr. Michaels raises requires us to interpret the driving under the influence statute. We apply the following principles when interpreting statutory language:

Statutory interpretation is a question of law. Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.

A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

In interpreting a statute, we will not ignore other statutory provisions pertaining to the same subject but will, instead, consider all such provisions in pari materia.

*J & T Properties, LLC v. Gallagher*, 2011 WY 112, ¶ 10, 256 P.3d 522, 524 (Wyo.2011) (citations omitted).

[¶ 14] Wyo. Stat. Ann. § 31–6–103(b) (LexisNexis 2009), the provision pursuant to which Mr. Michaels made his request for a hearing, provides in relevant part:

(b) *The scope of a hearing for the purposes of this act shall cover the issues of whether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31–5–233(b)* ..., whether the person was placed under arrest, whether he refused to submit to a test upon request of the peace officer or if he submitted to a test whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or

more, and whether ... he had been given the advisements required by W.S. 31–6–102(a)(ii).

(emphasis added.) Mr. Michaels contends the State failed to prove the highlighted portion of § 31–6–103(b), that is, that Trooper Miears had probable cause to believe he had been driving in violation of § 31–5–233(b). That section provides in relevant part as follows:

§ 31–5–233. **Driving or having control of vehicle while under influence of intoxicating liquor or controlled substances[.]**

. . . .

(b) No person shall drive or have actual physical control of any vehicle within this state if the person:

(i) Has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more; or

(ii) To a degree which renders him incapable of safely driving:

(A) Is under the influence of alcohol;

(B) Is under the influence of a controlled substance; or

(C) Is under the influence of a combination of any of the elements named in subparagraphs (A) and (B) of this paragraph.

[¶ 15] Reading the two provisions together, Mr. Michaels asserts the State had to prove that probable cause existed to believe that he was driving in violation of § 31–5–233(b) which he contends was intended to prohibit driving after consuming sufficient alcohol to have an alcohol concentration over the legal limit or be incapable of safely driving. Because the evidence showed that his diabetic condition created the alcohol in his system, and no evidence was presented that he drank any alcohol on the day of his arrest, he contends the State did not meet its burden of proving that probable cause existed to believe he was driving in violation of § 31–5–233(b). In support of his argument, he points to the title of the statute which clearly

prohibits driving while under the influence of "intoxicating liquor."[3]

[¶ 16] The plain and ordinary meaning of the word "liquor" is "*a:* a usually distilled rather than fermented alcoholic beverage." Merriam–Webster Collegiate Dictionary 679 (10th ed. 1999). "Intoxicate" means "*a:* to excite or stupefy by alcohol ... especially to the point where physical and mental control is markedly diminished." *Id.* at 614. Looking at the phrase "intoxicating liquor" in the title, it appears 31–5–233(b) was intended to make it unlawful for a person to drive or be in physical control of a vehicle while under the influence of an alcoholic beverage to the point of diminished physical and mental control.

[¶ 17] Looking beyond the title, we note that the phrase "intoxicating liquor" is not used in the statute itself. Instead, the body of the statute uses the word "alcohol." The plain and ordinary meaning of the word "alcohol" is: "*a:* ethanol especially when considered as the intoxicating agent in fermented and distilled liquors *b:* drink (as whiskey or beer) containing ethanol." Merriam–Webster Collegiate Dictionary 27. Ethanol is defined as: "a colorless volatile flammable liquid C2H5OH that is the intoxicating agent in liquors and is also used as a solvent and in fuel." *Id.* at 398. Applying the plain and ordinary meaning of the word alcohol, 31–5–233(b) makes it unlawful to drive or be in physical control of a vehicle while under the influence of fermented or distilled liquors or liquids containing ethanol. As Mr. Michaels maintains, in order to be convicted of violating the statute there must be proof that a person consumed or ingested liquor or liquid containing alcohol.

[¶ 18] This interpretation of 31–5–233(b) finds support in our prior case law. In *Goich v. State,* 80 Wyo. 179, 339 P.2d 119, 120 (1959), we considered W.S.1957 31–129 (the driving under the influence statute then in effect), which provided in relevant part as follows:

**31–129. Driving or in control of motor vehicle while under the influence of liquor prohibited[.]**—(a) It is unlawful ... for any person who is under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle, to drive any motor vehicle within this state.

(b) In any criminal prosecution for a violation of paragraph (a) of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendants blood at the time alleged as shown by chemical analysis of the defendants blood, urine, breath or other bodily substance shall give rise to the following presumptions:

1. If there was at that time 0.05 percent or less by weight of alcohol in the defendants blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor.

2. If there was at that time in excess of 0.05 percent but less than 0.15 percent by weight of alcohol in the defendants blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

3. If there was at the time 0.15 percent or more by weight of alcohol in the defendants blood, it shall be presumed that the defendant was under the influence of intoxicating liquor to a degree which renders him incapable of safely driving a motor vehicle.

We said the trial court had properly instructed the jury that the phrase "under the influence of intoxicating liquor" meant "that a person had taken into his stomach a sufficient quantity of intoxicating liquor so as to deprive him of the normal control of his

---

**3.** Mr. Michaels also points to subsection (a)(vii) to support his contention. That subsection provides:

(vii) "Alcohol" means any substance or substances containing any form of alcohol.

Whether or not this provision actually supports his argument, it is not relevant to the discussion.

Subsection (b)(vii) was added to § 31–5–233 by an amendment effective July 1, 2010—more than two months after Mr. Michaels' arrest. As provided in Wyo. Stat. Ann. § 6–1–101(b) (LexisNexis 2011), prosecutions are governed by the law in effect at the time the offense was committed.

bodily or mental faculties." *Goich*, 339 P.2d at 120 (citation omitted).

[¶ 19] More recently, in *Crum v. City of Rock Springs*, 652 P.2d 27, 28 (Wyo.1982) we considered a conviction under a municipal ordinance which provided:

> It is unlawful * * * for any person who is under the influence of intoxicating liquor to a degree which renders him incapable of safely driving a motor vehicle, to drive or have actual physical control of any vehicle within the City of Rock Springs.

The evidence presented was that Mr. Crum was driving a vehicle in the city, he drove through two red lights and, when stopped by law enforcement, his face was flushed, his speech was slurred, he had trouble maintaining his balance and he did not perform the field sobriety tests "too well." *Id.* We concluded a person could not do well on sobriety tests for a number of reasons having nothing to do with intoxicating liquor. We quoted the following from *People v. Butts*, 201 N.Y.S.2d 926, 932, 21 Misc.2d 799 (1960):

> There are approximately 60 pathological conditions that have symptoms similar to those of alcoholism. An apparent alcoholic condition might not be due to alcohol at all. It may be merely the result of injury or sickness. People taking medicines often act as if they had been imbibing too freely. The diabetic in need of, or with an overdose of, insulin may act as if he were intoxicated. Injuries to the nervous system or a concussion of the brain may create alcoholic symptoms.

*Id.* at 28–29. Citing *Goich*, we said that to support a conviction for driving under the influence of intoxicating liquor, "there must be some evidence of ingestion of alcohol." *Id.* at 29. Because there was no evidence linking the accused with intoxicating liquor, we held the prosecution did not meet its burden of proving that he was driving under the influence of intoxicating liquor and reversed the conviction.

[¶ 20] In *Walston v. State*, 704 P.2d 696, 698 (Wyo.1985), we reaffirmed that in order to establish a violation of 31–5–233(a) there must be some evidence that the accused consumed alcohol. There, the evidence showed:

> The deputy observed Mr. Walston in a bar where he appeared to have a drink in front of him, and he followed the appellant because he felt that he was too drunk to drive. When Walston was stopped, the deputy smelled alcohol, and Mr. Walston himself admitted that he had been drinking. Furthermore, there is ample evidence that alcohol had been ingested by Walston. In fact, there is evidence that appellant was drinking just before he left the bar, and he admits he had been drinking that afternoon. Once such evidence is introduced, there is a reasonable inference that the driving behavior of appellant was affected by alcohol. The rational relationship between the bloodshot eyes, poor balance and difficulty communicating with police and the ingestion of alcohol is clearly established. Appellant offered no alternative explanation for his condition and appearance.

[¶ 21] These cases were decided under older versions of the driving under the influence statute. However, as of the time of Mr. Michaels arrest in April of 2010, the statutory language defining the offense was substantially similar to the language in the older versions. None of the amendments to the statute that had been made up to that point indicated a legislative intent to broaden the offense to include anything other than alcohol that is ingested or consumed.[4] We hold the OAH incorrectly interpreted the law when it ruled 31–5–233(b) makes no distinction between alcohol that is consumed and alcohol that appears in the body by some other means. Giving the words in the statute their plain and ordinary meaning, we hold the

---

4. The Driver's License Act, Wyo. Stat. Ann. 31–7–101 through –405 (LexisNexis 2009), was amended in 1993 to define alcohol as "any substance containing any form of alcohol, including but not limited to, ethanol, methanol, propanol and isopropanol." § 31–7–102(a)(i). This amendment suggests a legislative intent to include liquids containing other forms of alcohol, such as solvents, that are consumed or ingested. It does not suggest the legislature intended to broaden the definition to include alcohol that is neither consumed nor ingested but created inside the body.

version of 31–5–233(b) in effect at the time of Mr. Michaels arrest prohibited a person from driving after consuming or ingesting alcohol over the legal limit or to a degree rendering him incapable of safely driving. There simply is nothing in the unambiguous language of the statute to indicate it was meant to cover alcohol that was not consumed or somehow ingested. Our conclusion in this regard, however, does not end the inquiry.

[¶ 22] For purposes of the license suspension hearing, the State was required to prove that *probable cause existed to believe* Mr. Michaels was driving in violation of 31–5–233(b). The State was not required to prove for purposes of suspending his license for ninety days that Mr. Michaels in fact had violated or was guilty of violating 31–5–233(b). Those were matters for determination in a separate criminal proceeding. As reflected in 31–6–103(b) set out more fully in paragraph 14 above, the issue for determination by the OAH in these proceedings as it relates to this appeal is whether probable cause existed to believe Mr. Michaels was driving in violation of 31–5–233(b).

[¶ 23] To support an arrest for a violation of § 31–5–233, a peace officer must have probable cause to believe that the individual was driving or had actual physical control of a motorized vehicle while his BAC was 0.08% or more or while he was under the influence of alcohol to an extent rendering him incapable of safely driving. Probable cause is shown when the facts and circumstances within the peace officer's knowledge and of which he had reasonably trustworthy information would warrant a reasonably cautious or prudent man to believe that the person arrested has committed an offense. *Mascarenas v. State,* 2003 WY 124, ¶ 10, 76 P.3d 1258, 1261 (Wyo.2003). The standard is an objective one which is not subject to police discretion. *Id.* Whether probable cause existed is determined from the vantage point of a prudent, reasonable, cautious peace officer on the scene at the time of the arrest. *Mickelson v. State,* 2008 WY 29, ¶ 19, 178 P.3d 1080, 1086 (Wyo.2008). Its existence depends upon the facts as they apparently existed at the time, and not upon the ultimate determination of the facts. *Id.*

[¶ 24] In this case, the State presented evidence that Trooper Miears clocked Mr. Michaels' vehicle at 96 miles per hour. Trooper Miears' report stated that Mr. Michael's eyes were blood shot and watery, his speech was slurred, his balance was poor and he smelled like alcohol. The report also stated Mr. Michaels did not comply with directives to stay in his vehicle and that Trooper Miears did not ask the normal preliminary questions about any medical conditions because of Mr. Michaels' "severe mood swings" and because he "did not want to upset [Mr. Michaels] and set him off" as occurred throughout their exchange. The report also describes in some detail the field sobriety tests Mr. Michaels attempted and was unable to perform satisfactorily, including the horizontal gaze nystagmus, walk and turn and one leg stand. Additionally, the report stated that three breath tests were given all showing Mr. Michaels' alcohol concentration was above the legal limit of 0.08%. From these facts, we conclude Trooper Miears had probable cause to believe Mr. Michaels was driving in violation of § 31–5–233(b). The fact that evidence may have come forth later, after the arrest, indicating Mr. Michaels was in a diabetic ketoacidosis state does not change the conclusion that Trooper Miears had probable cause at the time to believe he was driving in violation of § 31–5–233(b). Given that probable cause existed for the arrest, we affirm the district court's order upholding the license suspension.