2008 WY 115

**Arthur Cody GRAY a/k/a Tobin McGuffin, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–07–0143.

Supreme Court of Wyoming.

Oct. 3, 2008.

Representing Appellant: David M. Gosar of Jackson, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General. Argument by Ms. Radosevich.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   The Workers' Safety & Compensation Division (the Division) denied Appellant, Arthur Cody Gray (a/k/a Tobin McGuffin), benefits for expenses related to a back injury on the basis that the injury was not attributable to a work-related accident. Appellant requested review of the decision by the Office of Administrative Hearings (OAH), which upheld the Division's denial. Appellant now asks this Court to review the District Court Order affirming the OAH's decision. We reverse.

## ISSUES

[¶ 2]  1.  Were the findings and decision of the OAH unsupported by substantial evidence?

2.  Did the OAH err when it determined that conclusive medical testimony was required in order for Appellant to meet his burden of proof?

3.  Did the OAH abuse its discretion in admitting hearsay evidence presented by the Division?

## FACTS

[¶ 3]  Both parties agree that Appellant was bucked off a horse on June 19, 2002, in the course of his work as a trail guide.  The horse bucked Appellant off and then proceeded to crow-hop[1] on him repeatedly.  Appellant was rushed to the hospital and admitted with a number of injuries, including a "back strain and contusion."  On July 12, 2002, the Division determined the injuries related to the accident compensable and declared the incident an open case with regard to injuries to Appellant's "left abdomen, left back, left chest, left face, left upper leg(s), and left groin."  The Division paid benefits for medical treatment related to those injuries and Appellant collected temporary total disability benefits for about one month following the incident.

[¶ 4]  In September of 2002, Appellant told his orthopedic physician that his back "popped" and that he experienced immediate severe pain in his lower extremities.  His doctor ordered an MRI, which revealed that Appellant had a large herniated disk.  The Division initially paid for treatment for Appellant's back, including pain medications, injections, and office visits.  In November of 2002, however, the analyst responsible for Appellant's case received an anonymous telephone call informing her, among other things, that Appellant had been moving hay when his back popped.  The Division initiated an investigation into the anonymous claim.  As a result of that investigation, the Division issued a Final Determination on December 2, 2002, refusing further payment of

benefits because Appellant's "back injury was not caused by a work related incident."  After a series of hearings in 2003 and 2004, the OAH upheld the Division's denial of benefits in an order dated February 25, 2005.  The district court affirmed that decision on May 3, 2007.  This appeal followed.

## DISCUSSION

### Were the findings and decision of the OAH unsupported by substantial evidence?

[¶ 5]  W.R.A.P. 12.09(a) directs us to Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) for the matters to be considered in the review of administrative action.  We recently said the following with regard to the standard of review when we are required to examine the evidentiary findings of an agency:

> Section 16–3–114(c)(ii) provides only one evidentiary standard of review.  Under the plain language of the statute, reversal of an agency finding or action is required if it is "not supported by substantial evidence."  Because contested case hearings under Wyoming's Administrative Procedures Act, are formal, trial-type proceedings, use of the substantial evidence standard for review of evidentiary matters is more in keeping with the original intent of the drafters of the administrative procedures act.  33 Fed. Prac. & Proc., Judicial Review §§ 8333, 8334.
>
> Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling.  When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions.  If the hearing examiner determines that the burdened

---

1.  *Webster's Third New International Dictionary* 544 (1993) defines "crow-hop" as *"of a horse:* to buck without violence and with a series of short stiff-legged jumps."

party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo.1994); *[Board of Trustees of Laramie County School Dist. No. 1 v.] Spiegel*, 549 P.2d [1161,] 1178 [ (Wyo. 1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 21–22, 188 P.3d 554, 561 (Wyo.2008).[2] An agency's conclusions of law are reviewed *de novo*, and are affirmed if they are in accordance with the law. *Id.*, 2008 WY 84, ¶ 26, 188 P.3d at 562. "[W]e afford no deference to conclusions reached by the district court, but review the case as if it had come directly from the agency." *Loomer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 47, ¶ 15, 88 P.3d 1036, 1041 (Wyo.2004).

[¶ 6] Appellant presented significant argument that most of the OAH's findings of fact were irrelevant and/or unsupported by substantial evidence. We agree that many of the findings of fact are irrelevant and we are troubled to find that many are also unsupported by the record. Viewing the record as a whole, we conclude that the OAH's decision was unsupported by substantial evidence.

[¶ 7] The original emergency room reports from Appellant's accident indicate that he suffered a "[b]ack strain and contusion," along with a multitude of other injuries, as a result of his run-in with the horse on June 19, 2002. Appellant's original injury report to the Division does not specifically list his back among his injuries, but the final determination granting him coverage for his injuries does list his "left back" as an affected area. Multiple x-rays of the spine and a CT scan of the abdominal area were taken after the initial injury, but no MRI was performed. No acute findings were noted.

[¶ 8] Several months later, on September 4, 2002, Dr. William Neal conducted the orthopedic evaluation that led to the diagnosis of disk herniation. In his report, Dr. Neal states that Appellant reported that

[l]ast week his back "popped" giving him immediate pain down the (R) lower extremity. This resolved in a day or two, but then shifted to pain down the (L) lower extremity. He now has pain in the posterior buttock area, radiating down the posterior thigh, posterior calf and into the (L) great toe.

Dr. Neal did not testify at the hearing. A report by Dr. Mary Hume–Neal, dated September 5, 2002, indicates that "[o]n 6/19/02 [Appellant] was thrown off a horse and stomped on while at work and his back has been bothering him ever since. It has been increasing in intensity. Dr. Neal has requested further consultation for this problem." Dr. Hume–Neal's report states:

10% of his problem is low back pain while 90% is pain radiating posteriorly down his (L) lower extremity to his ankle. He also has (R) medial thigh pain. Mr. Gray describes his pain as constant. On a scale of 1–10 he rates his intensity of pain as a 9 with no relationship to the time of day.

Dr. Hume–Neal's report also contains findings that radiographic examination (an MRI) shows a large disk herniation. Dr. Hume–Neal did not testify at the hearing.

[¶ 9] Approximately one month later, on October 19, 2002, Appellant was treated for severe and sudden back pain in the emergen-

---

2. Although not relevant in the instant case, the "arbitrary and capricious" standard remains as a "safety net" for certain agency action that may be related to the evidence, but which action is not a true evidentiary question. *Dale,* 2008 WY 84, ¶ 23, 188 P.3d at 561.

cy room of the local hospital. The emergency room physician, Dr. Vaughn Morgan, reported that Appellant "does have weakness in the left leg and states he got up to go to the bathroom this morning, the left leg gave out and he went down hard onto the floor." Dr. Heidi Michelsen–Jost, who also treated Appellant in the E.R. that day, stated in her report that Appellant "had an acute onset episode of pain earlier today while in the standing position. The pain was so gripping shooting down his left lower extremity that he was unable to weightbear. There was even a transient episode of being unable to move the left lower extremity." [3] Neither Doctor Morgan, nor Doctor Michelsen–Jost testified at the hearing.

[¶ 10] Dr. Geoffrey Skene, Appellant's treating physician, did testify at the hearing. Dr. Skene first saw Appellant on September 5, 2002. Dr. Skene testified that x-rays would not show a soft-tissue injury (such as a herniated disk) and that a CAT scan or MRI was necessary for such a diagnosis. Dr. Skene also testified that typically the symptoms of a herniated disk "occur pretty close to the onset of the herniation" and that the back and leg pain Appellant reported to the E.R. physicians immediately after the accident could have been symptoms of either a disk herniation or a direct trauma. Dr. Skene said that it might be possible for pain medication and pain from other injuries to mask the symptoms from a herniated disk for a time. He also made clear that his exposure to Appellant was limited, that he saw Appellant largely for the purposes of treatment, and that his notes on the onset of the symptoms conflicted with those of his colleagues who initially examined Appellant.

Dr. Skene stated his opinion that the disk herniation was recent but could not offer an opinion as to the cause and said that any such determination would be speculation on his part.

[¶ 11] Melissa Plemel, the claims analyst assigned to Appellant's case, testified that she received an anonymous call in November of 2002. Ms. Plemel stated that the anonymous caller told her that Appellant had injured his back while moving hay in his back yard in *September* but that the caller, a woman, did not specify where she got this information. Brandon Munk, an investigator hired by the Division, also testified. Mr. Munk testified that he interviewed Appellant's ex-girlfriend, who told him that Appellant's back popped on *July 16th* while he was unloading four tons of hay at his home. Mr. Munk did not testify about whether the ex-girlfriend had witnessed this incident or merely heard about it either from Appellant or from some other source.

[¶ 12] Tom Swan testified that he loaded hay with Appellant approximately 30 to 60 days after the accident with the horse. He noted that Appellant appeared to be in some discomfort while they were loading hay and that Appellant put his hands on his lower back [4] or hips and grimaced in apparent pain during the job. Tom McHughes testified that he worked with Appellant at Jackson Hole Roofing starting in July of 2002 and that Appellant complained of pain in his legs and quit after about three or four weeks of work.

[¶ 13] Appellant testified on his own behalf at the hearing. He stated that he suffered from pain in his legs after the accident,

---

3. The hearing examiner used this emergency room report to find that Appellant was engaging in drug seeking behaviors because he was heavily sedated when he was seen in the emergency room. The examiner based this finding on Dr. Michelsen–Jost's description of Appellant as "extremely sedated and hardly able to follow commands" during her exam. However, the concurrently filed report of Dr. Vaughn indicates he administered "Ativan initially followed by Demerol and two doses of Inapsine" to Appellant when he arrived. This would seem adequately to explain Appellant's extreme sedation. We also fail to see why drug-seeking behavior in a patient known to be suffering from a large herniated

disk has any bearing on causation, which was the only issue before the OAH.

4. The hearing examiner mischaracterized much of the testimony in his findings. For example, the examiner found that "[Tom Swan] testified that during the summer of 2002 he and [Appellant] loaded and hauled hay and that [Appellant] said his back popped when hauling hay." The actual testimony reads as follows: "Q. Was there ever an incident that you recall where he told you that his back popped while he was loading hay? A. I can't say that he did. It doesn't come to mind."

but that he did not associate it with a back injury until his doctor informed him that the pain he was experiencing in his legs at that time was related to his herniated disk. Appellant also described pinching sensations and popping in his lower back, by his hips. He was on temporary total disability until mid-July of 2002, at which point he returned to work until he sought medical attention in September and the MRI showed that he had a herniated disk. The OAH found that Appellant was not a credible witness and largely disregarded Appellant's testimony.[5]

[¶ 14] The OAH's conclusion that Appellant had failed to establish that his herniated disk was related to his work injury of June 19, 2002, was against the great weight of the evidence. Medical records from the June 19 incident show that the horse struck Appellant in the back. Appellant testified that his discomfort was ongoing from the date of the original injury. While the hearing examiner found Appellant to be less than credible generally, two witnesses corroborated his testimony on that specific point. Dr. Skene testified that the pain medication Appellant was taking, and the symptoms from his other injuries, could have caused him to fail to recognize the herniated disk as a separate problem. Appellant's doctors told him that he would be in some discomfort for up to a year because of the extent of his injuries, and that it was possible some injuries would not become apparent until some of the direct trauma had healed. Dr. Skene testified that the pain Appellant described could have been early symptoms of a herniated disk and that almost any movement or everyday activity could have caused the sort of increase in symptoms Appellant experienced in September. While the medical evidence was equivocal, the Division presented no other explanation for the continuing symptoms.

[¶ 15] The only relevant evidence the Division offered on the point of causation was the hearsay statements of Appellant's ex-

girlfriend who said that Appellant was injured loading hay in July and that she believed he was partially faking his symptoms, and another hearsay statement by an anonymous caller that Appellant had injured himself loading hay in September. Neither of those people testified at the hearing or presented a sworn statement of any sort to the OAH. The OAH is entitled to consider "the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs." Wyo. Stat. Ann. § 16–3–108(a) (LexisNexis 2007). However, the two statements at issue here, one from an anonymous source, conflict with each other on at least one important point and do not identify the source of the declarants' information. While it may be proper to consider such evidence, such evidence alone cannot serve as the basis for a reasonable decision.

### Did the OAH err when it required Appellant to present conclusive medical testimony in order to meet his burden of proof?

[¶ 16] The hearing examiner concluded that Appellant could not meet his burden of proof because Dr. Skene's medical opinion was "expressed in turns [sic] of 'can', 'could' or 'possibly.' " "Allocation of the burden of proof is a matter of law. Conclusions of law of an administrative agency are affirmed if they are found to be in accordance with law." *Corman v. State ex. rel. Wyo. Workers' Safety & Comp. Div.*, 909 P.2d 966, 970 (Wyo.1996). The hearing examiner appears to have concluded that the testimony was insufficient as a matter of law, so we will review the question *de novo*.

[¶ 17] There is no requirement that medical testimony be presented in any specific form in a workers' compensation case. "Generally, when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the

5. Many of the findings related to Appellant's credibility are either irrelevant to such a determination or simply not supported by the evidence presented at the hearing. For example, the hearing examiner found that Appellant's use of a name other than his legal name reflected negatively on his credibility. However, Appellant's

unrebutted testimony is that he took his stepfather's name legally when he was younger, but that he has always gone by his birth name. Furthermore, two witnesses corroborated Appellant's testimony on the vital issue of whether or not he was experiencing symptoms for a time before seeking medical treatment.

**252**

occurrence and the injury. However, under certain circumstances, medical testimony may be essential to establish a causal connection." *Thornberg v. State ex. rel. Wyo. Workers' Safety & Comp. Div.*, 913 P.2d 863, 867 (Wyo.1996) (citations omitted). In *Hansen v. Mr. D's Food Center*, 827 P.2d 371, 374 (Wyo.1992), we found that an employee who had an original compensable injury and was claiming a recurrence of that injury more than a year later had met her burden of proof without medical testimony. Here, the medical evidence showed that Appellant was injured and that the injury he suffered was of the sort that could have occurred during the work-related incident. That testimony alone may not have been sufficient to meet Appellant's burden of proof on causation, given the gap in time between the incident and the MRI that showed the injury. However, it was certainly permissible for Appellant to fill that gap with evidence of his symptoms between the incident and the diagnosis. The hearing examiner erred as a matter of law when he required Appellant conclusively to prove causation through medical testimony.

### *Did the OAH abuse its discretion in admitting hearsay evidence presented by the Division?*

[¶ 18] "Admissibility of evidence is committed to the discretion of the hearing examiner. A hearing examiner abuses his discretion when his decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Goddard v. Colonel Bozeman's Rest.*, 914 P.2d 1233, 1238 (Wyo. 1996) (citation omitted).

[A]dministrative agencies acting in a judicial or quasi judicial capacity are not bound by technical rules of evidence that govern trials by courts or juries, and it is usually held that evidence will not be excluded merely because it is hearsay. Where hearsay evidence is by statute admissible in administrative proceedings, it is often held that it must be probative, trustworthy and credible; and, although it may not be the sole basis for establishing an essential fact and is insufficient to support an administrative decision it may be considered as corroborative of facts otherwise established.

*Story v. Wyo. State Bd. of Med. Exam'rs*, 721 P.2d 1013, 1018 (Wyo.1986) (citations omitted).

[¶ 19] We do not find that the hearing examiner abused his discretion in admitting the hearsay statements of the anonymous caller to the Division. At the time the statements were admitted, the hearing examiner had no way of knowing whether those statements would be corroborated, and it is undisputed that the Division did rely on that phone call to open an investigation into Appellant. It was also not beyond the bounds of reason to admit the statements of Appellant's ex-girlfriend. As discussed above, however, the hearing examiner should not have relied on those statements to support his conclusions when it turned out they were not corroborated by any credible evidence.

### CONCLUSION

[¶ 20] The OAH's findings of fact and conclusions of law were unsupported by substantial evidence. The OAH also erred as a matter of law when it held that a specific form of medical testimony was required in order for Appellant to meet his burden of proof. It was not error for the OAH to admit hearsay evidence; however, it was improper to rely on such evidence as the sole basis of support for several findings and conclusions. We reverse and remand to the district court for further remand to the OAH for entry of an order consistent herewith.