2010 WY 10

**In the Matter of the Worker's Compensation Claim of Bryan DUTCHER, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–09–0093.

Supreme Court of Wyoming.

Feb. 4, 2010.

Representing Appellant: Kenneth DeCock, Plains Law Offices LLP, Gillette, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

KITE, Justice.

[¶ 1] After experiencing sudden numbness and weakness on his left side while at work, Bryan Dutcher sought workers' compensation benefits. The Wyoming Workers' Safety and Compensation Division (the Division) denied coverage and Mr. Dutcher objected. The Office of Administrative Hearings (OAH) held a contested case hearing and, concluding that Mr. Dutcher failed to prove his injuries were work related, upheld the denial. The district court affirmed and Mr. Dutcher appealed to this Court. We affirm.

## ISSUES

[¶ 2] Mr. Dutcher presents the following issues for this Court's determination:

A. Is there substantial evidence to support the Hearing Officer's conclusion?

B. Is the Hearing Officer's decision arbitrary and capricious?

## FACTS

[¶ 3] Mr. Dutcher was employed as a laborer for L & L Mine Services in Gillette, Wyoming. On October 9, 2006, he was lying on his left side scraping grease off a large piece of equipment. As he reached with his right arm, he felt numbness and weakness in his left side. Later, he felt dizzy, could not use his left arm and experienced weakness in his left leg and left facial droop.

[¶ 4] Mr. Dutcher informed his foreman, who transported him from the mine into town where his wife met them and took Mr. Dutcher to the emergency room. The medical personnel admitted and examined him over the next few days as a possible stroke victim. The hospital released him on October 12, 2006.

[¶ 5] On October 16, 2006, Mr. Dutcher consulted Angelo Santiago, M.D., a neurologist who, after examining Mr. Dutcher and performing tests, diagnosed him with brachial plexopathy.[1] Mr. Dutcher sought a second opinion from another neurologist, Robert Finley, M.D. After examining him, Dr. Finley recommended that Mr. Dutcher continue treatment with Dr. Santiago. Mr. Dutcher

---

1. Brachial plexopathy is pain, decreased movement, or decreased sensation in the arm and shoulder due to a nerve problem. It occurs when there is damage to the brachial plexus, an area where a nerve bundle from the spinal cord splits into the individual arm nerves. Damage to the brachial plexus is usually related to direct injury to the nerve, stretching injuries, pressure from tumors in the area, or damage that results from radiation therapy. http:www.nlm.nih.gov/ medlineplus/ency/article/001418.htm.

sought still another opinion from Dr. Robert Neuwirth, who concluded brachial plexopathy was unlikely and the most likely diagnosis was cervical myelopathy. Dr. Neuwirth also noted significant thyroid dysfunction as a contributing factor and the possibility of an injury to Mr. Dutcher's vertebral artery perhaps brought on by his prolonged position on his left side at work.

[¶ 6] Mr. Dutcher returned to work in the latter part of December, 2006. In May of 2007, his employer let him go and Mr. Dutcher filed an injury report with the Division. The Division denied coverage in a final determination issued on August 7, 2007, in which it noted Mr. Dutcher had a pre-existing seizure condition and concluded there was no clear indication of a work injury. Mr. Dutcher objected and the Division referred the case to the OAH.

[¶ 7] In early 2008, the Division retained Thomas Mayer, M.D., another neurologist, to perform an independent medical examination of Mr. Dutcher. Dr. Mayer concurred with the diagnosis of brachial plexopathy and concluded it was related to Mr. Dutcher's employment. Dr. Mayer also concluded the brachial plexopathy may have been followed by, and may have triggered, a seizure.

[¶ 8] The OAH held a contested case hearing on April 15, 2008. Following the hearing, the hearing examiner denied Mr. Dutcher's claim for benefits, concluding he did not meet his burden of proving that the seizure or brachial plexopathy were related to his employment. Mr. Dutcher appealed the order to the district court which affirmed the denial of benefits. Mr. Dutcher timely appealed to this Court.

## STANDARD OF REVIEW

[¶ 9] When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision; instead, we review the case as if it had come directly to us from the administrative agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] In this case, Mr. Dutcher challenges the hearing examiner's determination that he did not meet his burden of proving that his brachial plexopathy and seizure were related to his employment. We, therefore, decide whether there is substantial evidence to support the hearing examiner's decision to reject the evidence Mr. Dutcher presented by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *Dale*, ¶ 22, 188 P.3d at 561. If, in the course of its decision making process, the agency disregarded certain evidence and explained its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. *Id.* Importantly, our review of any particular decision turns not on whether we

agree with the outcome, but on whether the agency could reasonably conclude as it did based upon all the evidence before it. *Id.*

## DISCUSSION

[¶ 11] Mr. Dutcher asserts that the hearing examiner's decision is contrary to the overwhelming weight of the evidence because three doctors, including the doctor the Division retained, concluded the brachial plexopathy was related to his employment. He contends that in reaching the contrary conclusion the hearing examiner had to ignore the opinions of those three doctors and rely exclusively on Dr. Neuwirth who reached his conclusions without the benefit of the test results Dr. Santiago obtained, which clearly showed Mr. Dutcher suffered from brachial plexopathy.

[¶ 12] The Division responds that the hearing examiner's decision was supported by substantial evidence. It asserts that Mr. Dutcher's story was inconsistent in that he did not report that his shoulder popped until he was seen by Dr. Mayer. Given this inconsistency, the Division asserts, and the fact that Dr. Mayer's opinions were based heavily on what Mr. Dutcher told him, the hearing examiner properly discounted both Mr. Dutcher's testimony and that of Dr. Mayer. The Division further contends that the other medical opinions did not tie the brachial plexopathy to Mr. Dutcher's work. The Division asserts substantial evidence supported the hearing examiner's conclusions that the seizure was part of a pre-existing condition and was not triggered by the shoulder incident; it was questionable whether Mr. Dutcher suffered a brachial plexopathy; and, even if he suffered a brachial plexopathy, he failed to prove that it was related to his work.

[¶ 13] Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2009) defines the term injury in relevant part as:

> [A]ny harmful change in the human organism other than normal aging .... arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects

the employee to extrahazardous duties incident to the business. "Injury" does not include:

> ....

> (F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made[.]

[¶ 14] Applying this provision, we have said that an employer takes an employee as he finds him, and an employee who has a pre-existing condition may still recover if his employment substantially or materially aggravated the condition. *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo.1984). We have cited with approval the widely accepted treatise, Larson's Workmen's Compensation Law, for the proposition that:

> Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

*Lindbloom*, 684 P.2d at 1389; *Wyo. Workers' Comp. Div. v. Faulkner*, 2007 WY 31, ¶ 11, 152 P.3d 394, 397 (Wyo.2007); *State ex rel. Wyo. Workers' Comp. Div. v. Fisher*, 914 P.2d 1224, 1227 (Wyo.1996).

[¶ 15] Whether the employment aggravated, accelerated, or combined with the pre-existing condition to produce the disability is a question of fact, not law, and a finding of fact on this point based on any medical testimony will not be disturbed on appeal. *Straube v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 66, ¶ 15, 208 P.3d 41, 48 (Wyo.2009). To prove aggravation of a preexisting condition, a claimant must demonstrate by a preponderance of the evidence that the work contributed to a material degree to the aggravation of the condition. *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker*, 2007 WY 65, ¶ 14, 156 P.3d 977, 981–82 (Wyo.2007). The causal connection between the work and the condition is satisfied if the medical expert testifies it is more probable than not that the work contributed in a material fashion to the aggravation of the injury. *Langberg v. State ex rel. Wyo. Workers' Safety & Comp. Div.*,

2009 WY 39, ¶ 26, 203 P.3d 1098, 1104 (Wyo. 2009). Testimony by the medical expert to the effect that the injury "most likely" or "probably" is the product of the workplace suffices under our established standard. *Decker v. State ex rel. Wyo. Med. Comm'n,* 2008 WY 100, ¶ 30, 191 P.3d 105, 121 (Wyo. 2008).

[¶ 16] One difficulty with Mr. Dutcher's claim is that, contrary to his assertion, two of the three doctors upon whom he relies did not state that the brachial plexopathy was related to his work. Dr. Santiago, who diagnosed Mr. Dutcher with left brachial plexopathy, did not express any opinion as to the cause of the condition. Dr. Finley, who saw Mr. Dutcher next, noted only that Mr. Dutcher had a recent history of new onset of left face, arm and leg numbness and weakness; the hospital evaluation showed no definitive indications of a stroke; Dr. Santiago concluded based on EMG/nerve conduction studies that Mr. Dutcher suffered a left brachial plexus injury; and Mr. Dutcher was hypothyroid. Like Dr. Santiago, Dr. Finley offered no opinion as to the cause of Mr. Dutcher's medical problems.

[¶ 17] The third physician upon whom Mr. Dutcher relies is Dr. Mayer, whose opinion the hearing examiner disregarded because it was based on the history he obtained from Mr. Dutcher, which the hearing examiner found to be inconsistent with the history Mr. Dutcher gave at the hospital and to Drs. Santiago, Finley and Neuwirth. From the information Mr. Dutcher provided, Dr. Mayer concluded that he sustained a shoulder injury with resultant brachial plexus lesion followed by a seizure. Dr. Mayer further concluded it was more likely than not that the brachial plexopathy was related to Mr. Dutcher's work activities. Dr. Mayer also testified, however, that brachial plexopathy did not account for the left sided weakness Mr. Dutcher experienced. Dr. Mayer postulated that those symptoms were possibly caused by a seizure. He testified that even the difficulties with Mr. Dutcher's left arm could have been related to a seizure. Dr. Mayer testified that in his opinion the seizure was not related to Mr. Dutcher's work; however, he also testified that the brachial plexo-

pathy "may well have been" a triggering event for the seizure.

[¶ 18] As noted above, the hearing examiner disregarded Dr. Mayer's opinions because he testified they were based on the history Mr. Dutcher provided, which the hearing examiner found to be inconsistent with his earlier reports. Dr. Mayer's records reflect that Mr. Dutcher reported that he was lying on his left side "with the elbow propped out" scraping grease with his right hand when "his elbow slipped and he felt a pop in his shoulder." The treatment record continues: "He did not think much of this and finished what he was doing. Sometime shortly thereafter, he got up and stated that he just did not feel right. He was somewhat weak on the left side, involving not only the arm, but also the face and leg."

[¶ 19] Like his report to Dr. Mayer, Mr. Dutcher testified at the hearing that he was lying on his left side with his weight on his elbow cleaning off a hoist case when he felt his shoulder pop out. He testified that he felt pain in his neck, started to get up and felt dizzy. He sat back down and felt pain radiating from his neck down his arm to his fingers. He testified that later, after he resumed working, his left arm began to go numb and he could not use it. He testified that he took his lunch break, went back to work and, after finishing his shift, told his foreman, Steven Peterson, he needed medical attention. He testified Mr. Peterson drove him to town and by the time they arrived at the shop his left side was shutting down, his tongue was swelling and he could hardly talk. The next morning his left leg would not function.

[¶ 20] In contrast to Mr. Dutcher's hearing testimony and the history he provided to Dr. Mayer, the records following the incident contain no reference to a shoulder injury or to his shoulder "popping." The hospital records state that Mr. Dutcher arrived at the emergency room after a sudden onset of left-sided tingling and numbness, difficulty moving his left arm, left facial droop with tingling in his mouth and slowed speech. Dr. Santiago's records from a week after the incident indicate that Mr. Dutcher reported he had been lying on his left side for thirty to forty

minutes cleaning heavy equipment when he experienced left upper extremity numbness and weakness.[2] Dr. Finley, who saw Mr. Dutcher three weeks after the incident, reported that Mr. Dutcher said he had been lying on his left shoulder for about thirty minutes while doing some scraping with his right hand when his left side seemed to go to sleep. When he stood up, his left arm and leg were numb, his speech was somewhat impaired and his tongue and lips were numb. Dr. Neuwirth's records from one month after the incident indicate Mr. Dutcher reported he was lying on his left side propped up on his elbow cleaning a large machine when he suddenly had difficulty moving his arm. Dr. Neuwirth's records continue: "This got worse over the next little while to where he could not walk at all and he was having difficulty with moving on the left side of his face."

[¶ 21] In addition to considering Mr. Dutcher's description of the incident contained in these records, the hearing examiner heard the testimony of Mr. Peterson, Mr. Dutcher's foreman, which differed somewhat from Mr. Dutcher's testimony. Mr. Peterson testified that at around 9:00 or 10:00 a.m. he saw Mr. Dutcher working on cleaning a shovel, thought he looked pale and asked him if he was okay. He testified Mr. Dutcher responded that he was fine. Mr. Peterson testified that he saw Mr. Dutcher again before the lunch break, he still looked pale, he asked him again if he was okay and Mr. Dutcher again said he was fine. Mr. Peterson testified that after lunch, as they were heading back to work, Mr. Dutcher said that his left side had gone numb and his lips were tingling. Later, Mr. Dutcher told him he lost control over his left side when he was cleaning the shovel. Mr. Peterson testified that Mr. Dutcher did not say anything about his shoulder going out until he returned to work in May of 2007.

[¶ 22] From our review of the record, we conclude there is substantial evidence to support the hearing examiner's decision to reject the evidence Mr. Dutcher presented and that

decision was not contrary to the overwhelming weight of the evidence in the record as a whole. *Dale*, ¶ 22, 188 P.3d at 561. There is no question that Mr. Dutcher had a long history of a seizure disorder. The symptoms he reported at the hospital and within the next few weeks following the incident were consistent with a seizure. Even Dr. Mayer testified that the left-sided symptoms, including the arm weakness and numbness, could have been related to a seizure. His testimony that Mr. Dutcher suffered a work related brachial plexopathy was based entirely on the patient's report that his elbow slipped and his shoulder popped. Yet, there was no indication in any of the early medical records that Mr. Dutcher suffered a shoulder injury or that he felt his shoulder pop.

[¶ 23] It is the hearing examiner's responsibility to determine the credibility of the witnesses and weigh the evidence. *Dale*, ¶ 49, 188 P.3d at 566. Additionally, a hearing examiner is entitled to disregard an expert opinion if he finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant. *Id.* The hearing examiner in the present case heard the testimony of Mr. Dutcher and Mr. Peterson and was entitled to weigh their credibility. In weighing Mr. Dutcher's testimony, the hearing examiner also considered the medical records containing the history Mr. Dutcher gave immediately after the incident. Dr. Mayer conceded that he relied on the history Mr. Dutcher related in reaching the conclusion that Mr. Dutcher suffered a shoulder injury. Those factors, coupled with the fact that, until Dr. Mayer examined Mr. Dutcher in 2008, none of the records mentioned a shoulder injury or shoulder popping, supports the hearing examiner's decision.

[¶ 24] In addition to the inconsistent reporting, the lack of testimony linking Mr. Dutcher's medical condition to his work supports the hearing examiner's ruling. Dr. Neuwirth stated the most likely diagnosis

---

2. In the "Chief Complaint and History of Present Illness" paragraph, Dr. Santiago's records state that Mr. Dutcher experienced "right" upper extremity weakness. However, his impression and diagnosis, as well as the hospital and other physician records, reflect left-sided weakness. Therefore, we will assume the initial references to right upper extremity weakness were error.

was cervical myelopathy with a *possibility* of injury to Mr. Dutcher's left vertebral artery *perhaps* related to the physical position he was in at work. This language does not satisfy our standards requiring medical evidence that the work "most likely" or "probably" contributed to the injury. The *possibility* of an injury that is *perhaps* related to the work is not sufficient.

[¶ 25] Dr. Mayer's testimony likewise was not sufficient. Although he testified that in his opinion Mr. Dutcher suffered from work related brachial plexopathy, Dr. Mayer also testified that brachial plexopathy did not explain the symptoms involving Mr. Dutcher's left leg, face and speech. Dr. Mayer testified that the left-sided symptoms, including those involving the arm, could have been related to a seizure. He further testified that the seizure was not work related. However, he later testified that brachial plexopathy could have triggered the seizure. Given this wavering testimony, we conclude substantial evidence supported the hearing examiner's conclusion that Mr. Dutcher failed to meet his burden of proving his condition was work related and that conclusion was not against the overwhelming weight of the evidence.

[¶ 26] There is no question from the evidence that Mr. Dutcher experienced left-sided weakness at work after lying on his left side cleaning equipment. The difficulty with Mr. Dutcher's claim, however, is that the physicians who evaluated him did not all agree on a diagnosis and, of the physicians who did agree (or at least did not disagree) with the brachial plexopathy diagnosis, none of them sufficiently linked his condition to his work. There was no testimony that Mr. Dutcher's left-sided numbness and weakness was related to the work he was performing at the time.

[¶ 27] Affirmed.