2011 WY 118

**Carol J. MIDDLEMASS, Appellant (Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–11–0007.

Supreme Court of Wyoming.

Aug. 11, 2011.

Representing Appellant: Matthew D. Winslow of Keegan & Winslow, P.C., Cody, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   Carol J. Middlemass appeals from the district court's affirmance of the Office of

Administrative Hearings (OAH) decision upholding the Wyoming Workers' Safety and Compensation Division's (Division) denial of her request for worker's compensation benefits for an injury to her shoulder. She claims the OAH's determination that she failed to meet her burden of proving the injury resulted from her work activities is not supported by substantial evidence and the OAH erred by ruling that medical evidence was necessary to establish the cause of her shoulder injury.

[¶ 2]   We affirm.

### ISSUES

[¶ 3]   Although Ms. Middlemass articulates the issues differently, the issues we must decide are:

1.   Is there substantial evidence to support the hearing examiner's conclusion that Ms. Middlemass did not meet her burden of proving that her shoulder injury was caused by her work activities?

2.   Did the OAH correctly conclude that expert medical evidence was necessary to establish causation? [1]

### FACTS

[¶ 4]   Ms. Middlemass was involved in a serious car accident in 1987. She suffered many injuries, including a broken right shoulder. Ms. Middlemass spent two to three months in the hospital and then underwent several months of physical therapy. She recovered and was able to use her shoulder normally.

[¶ 5]   Ms. Middlemass was a packer for Y–Tex Corporation in Cody, Wyoming. Her job was to retrieve newly molded livestock ear tags from a conveyor belt, place insecticide tabs in the ear tags, fill plastic bags with twenty ear tags, seal the bags and place the bags in a box for shipping. She sat on a swiveling chair and the work area was set up in a semi-circle around her. Ms. Middlemass stated that on February 12, 2009, she injured

her right shoulder when she reached for some tags. She continued to work until shortly before her shift ended, but stated that she was in significant pain. The next day she was unable to work because of the pain. Ms. Middlemass was examined at an urgent care center and referred to orthopedist, Jimmie Biles, M.D.

[¶ 6]   At Dr. Biles' office, Ms. Middlemass was seen by Mary Phillips, an orthopedic specialty nurse practitioner. Ms. Middlemass underwent an MRI which showed three areas of pathology—a complete tear of the supraspinatus at the top part of the rotator cuff; a partial tear of the infraspinatus at the back part of the rotator cuff; and a tear of the labrum, the cartilage inside the shoulder joint around the socket.

[¶ 7]   Ms. Middlemass filed an injury report and applied for worker's compensation benefits, but the Division denied her claim due to her preexisting condition from the 1987 automobile accident. Ms. Middlemass objected and the Division referred the matter to the OAH for a contested case hearing. At the hearing, Ms. Middlemass, her employer, and the Division presented evidence, including the deposition testimony of Dr. Biles. Ms. Middlemass conceded that the supraspinatus and labrum tears were attributable to her preexisting condition and focused on obtaining worker's compensation coverage for the infraspinatus tear.

[¶ 8]   The hearing examiner issued a decision upholding the Division's denial of Ms. Middlemass' claim. He concluded that she had failed to meet her burden of proving that the infraspinatus tear was caused by her work activities. In particular, he stated that, because of her preexisting right shoulder condition, causation needed to be established by medical evidence and Dr. Biles was equivocal in his testimony about the cause of the infraspinatus tear and had incorrect information about the circumstances of her February 2009 injury.

---

1.   Ms. Middlemass also claims the OAH erred by ruling that her injury was one which occurred over a substantial period of time and concluding that she had not met the heightened standard of proof under Wyo. Stat. Ann. § 27–14–603(a)

(LexisNexis 2011) required for such injuries. Our other rulings in this case make it unnecessary to review this alternative ground for denial; consequently, we will not discuss it.

[¶ 9] Ms. Middlemass filed a petition for review with the district court, which affirmed the OAH decision. She then appealed to this Court.

## STANDARD OF REVIEW

[¶ 10] When an appeal is taken from a district court's review of an administrative agency's decision, we consider the case as if it had come directly from the administrative agency without giving any deference to the district court's decision. *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] In accordance with § 16–3–114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale*, ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005) (citation omitted). *See also, Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Kenyon*, ¶ 11, 247 P.3d at 849, quoting *Bush*, ¶ 5, 120 P.3d at 179.

[¶ 12] Reviewing an agency's determination that the claimant did not satisfy her burden of proof, we apply the following standard:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale*, ¶ 22, 188 P.3d at 561 (citations omitted).

[¶ 13] " 'We review an agency's conclusions of law de novo, and will affirm only if the agency's conclusions are in accordance with the law.' " *Kenyon*, ¶ 13, 247 P.3d at 849, quoting *Moss v. State ex rel. Wyo. Workers' Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo.2010); *Dale*, ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 14] A worker's compensation claimant has the burden of proving all of the essential elements of her claim by a preponderance of the evidence. *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker*, 2007 WY 65, ¶ 13, 156 P.3d 977, 981 (Wyo. 2007); *Sanchez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 64, ¶ 7, 134 P.3d 1255, 1257 (Wyo.2006). "This burden includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment." *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo.2001). *See also, State ex rel. Wyo. Workers' Comp. Div. v. Espinoza*, 924 P.2d 979, 981 (Wyo.1996). Preexisting conditions are excluded from the definition of compensable injury. Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (LexisNexis 2011).

[¶ 15] Nevertheless, an employee who has a pre-existing condition may still recover if her "employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." *Dutcher*, ¶ 14, 223 P.3d at 562, quoting *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo.1984). " 'To prove aggravation of a preexisting condition, a claimant must demonstrate by a preponderance of the evidence that the work contributed to a material degree to the aggravation of the condition.' " *Dutcher*, ¶ 15, 223 P.3d at 562, citing *Slaymaker*, ¶ 14, 156 P.3d at 981–82.

[¶ 16] The OAH reached the following conclusions regarding the evidence of the cause of Ms. Middlemass' shoulder injury:

19. As Claimant concedes, she has had for a substantial period of time a rotator cuff injury consisting of a full thickness tear of the supraspinatus muscle-tendon and a long standing cartilage abnormality inside the shoulder joint itself, all quite obviously stemming from the 1987 motor vehicle accident. The question becomes whether the partial tear of the infraspinatus can be said to have been caused by Claimant's work activities on February 12, 2009.

20. Contrary to Claimant's assertion, this is not a case where credible testimony by the Claimant that she did not have pain prior to the work effort at a particular time and then subsequently became painful is adequate to demonstrate a work injury. Because of the preexisting condition affecting the other part of the rotator cuff, the Office concludes that medical proof is necessary to demonstrate work-relatedness.

21. The need for convincing medical proof is problematic for Claimant because it appears Dr. Biles' understanding of the mechanism of injury was an activity that Claimant did not undertake at work, namely reaching overhead and outward. He did not have an accurate history.

22. Additionally, Dr. Biles' testimony was equivocal, indicating that he couldn't really give an opinion as to whether the partial tear of the infraspinatus occurred at the time of the "accident" (which, again, he misunderstood) or whether it was progression of the supraspinatus tear. When he states that it is possible that this partial tear was worsened by Claimant's activity, again, he had a misunderstanding of the work activity. As noted by the Division, Claimant's activities were much more strenuous and vigorous outside of work than at work. Accordingly, the Office does not find Dr. Biles' testimony persuasive medical proof of the existence of a work injury.

23. There was a failure of proof that Claimant's employment aggravated, accelerated or combined with the pre-existing rotator cuff disease process.

[¶ 17] Ms. Middlemass claims the hearing examiner's conclusion that she did not meet her burden of proving the infraspinatus tear was work related is not supported by substantial evidence. She also asserts the hearing examiner erred by requiring medical expert testimony to establish that her injury was work related.

[¶ 18] Starting with the substantial evidence issue, the hearing evidence included Ms. Middlemass' medical records from Dr. Biles' office, and testimony by Ms. Middle-

mass, three of her friends, her supervisor at Y–Tex, and Dr. Biles (by deposition). Ms. Middlemass testified that she had injured her right shoulder in the 1987 car accident, but after undergoing physical therapy she had no limitations and did not experience pain. The only residual effect from the accident was a feeling of stiffness in very cold weather. She testified that, before the February 2009 incident, she did not have any pain in her shoulder and could do almost anything, including staging gunfights with a performance group, doing work around her house, playing guitar, and assisting her disabled husband.

[¶ 19] Ms. Middlemass stated that on February 12, 2009, she was working at the conveyor belt, and "... behind me there was a box. I'm doing this with my left hand, from left to right. But when I was doing it, I was just putting the bag in the box, and I reached over to grab the tag when I felt the pop that afternoon." She further described the incident as: "I was just reaching back, and when I reached back and I reached over to grab [the tags] off the conveyor belt, I felt this pop. I hurt pretty good." She testified that, after the incident, she was limited in what she could do with her right arm and had to give up many activities. Three of Ms. Middlemass' friends testified at the hearing. In general, they confirmed her active lifestyle before the incident and her limitations and pain after the incident.

[¶ 20] Dr. Biles' deposition was admitted at the OAH hearing. He testified that he had diagnosed three different areas of pathology in Ms. Middlemass' shoulder: 1) a complete tear of the top part of the rotator cuff (supraspinatus); 2) a partial tear of the back part of the rotator cuff (infraspinatus); and 3) torn cartilage inside the shoulder joint involving the cartilage lip around the socket (labrum).

[¶ 21] Dr. Biles stated that x-rays and a MRI of Ms. Middlemass' shoulder showed a previous fracture of the humeral head and atrophy of the supraspinatus muscle. He explained that the earlier fracture had healed

in such a way as to cause the head to rub on the acromion,[2] "and that indirectly certainly could cause a tear of the rotator cuff," which could result in the atrophy of the supraspinatus muscle. Dr. Biles testified that the atrophy of the muscle and tear of the supraspinatus tendon definitely occurred before the February 2009 work incident. He also testified that the labrum tear was "more likely to have occurred from the motor vehicle accident than just moving her arm overhead."

[¶ 22] Dr. Biles was questioned about the timing of the infraspinatus tear on the back part of the rotator cuff and stated, "I don't know, honestly. I can't tell you whether [the infraspinatus tear] occurred at the time of the accident or whether that's progression of the supraspinatus tear." The questioning continued:

Q. So it's possible that on February 12 of '09 that reaching behind caused this second pathology, the partial tear of the back part of the rotator cuff?

A. Yes, it's possible.

Q. Is it likely?

A. I really don't know. I can't give you a probability of when that partial tear occurred.

\* \* \*

Q. [W]e've established that we are not going to be able to establish one way or another whether it's more probable than not that the partial tear of the back part of the rotator cuff preexisted February 12, '09, correct?

A. Correct. I can't tell you, based on the MRI, whether that partial tear occurred a long time ago or recently.

[¶ 23] When questioned about the mechanism of Ms. Middlemass' injury, Dr. Biles testified:

Q. Does turning and reaching the arm without any weight on it or anything like that, is that a normal cause of a tear to the cartilage or a rotator cuff tear?

A. Nope.

\* \* \*

---

**2.** The acromion is defined as "the outer end of the spine of the scapula ... protecting the glenoid cavity, forming the outer angle of the shoulder and articulating with the clavicle. Also called *acromial process*." *Webster's Third New Int'l Dictionary* 19 (2002).

Q. And what, in your opinion, then, led to that result in this particular patient?

A. I mean, she had—it's my understanding that she had—did she have a box in her arm or she was just putting something in a box?

Q. Well, the history I was given—and I believe that's consistent with the history that's written on your NP's note—is that she was putting something in a box.

A. So I mean, without lifting the box or having a load in her arm and turning her arm, it would be difficult to have these—all these injuries occur from that.

The doctor also stated:

Q. I think you have been—I think you had testified that it would be difficult to have all of these injuries occur from the turning. I think we touched on this; I just want to be clear.

Assuming that the supraspinatus tear on the top and the labrum tear were preexisting, would the injury, as—or the mechanism of [the] injury, as described in her history, be consistent with the infraspinatus partial tear?

A. Yes. It's possible she could have partially torn that part of the rotator cuff just from reaching overhead, reaching as she did.

[¶ 24] Ms. Middlemass' attorney questioned Dr. Biles about the use of a patient's history in forming a diagnosis:

Q. ... There was some discussion about opinions based on a self-reported history. In your practice as an orthopedic surgeon, is a self-reported history from a patient something that you would generally rely upon in forming opinions?

A. Yes.

\* \* \*

Q. In a case where there is a report of no pain prior to hearing a pop and then pain subsequent to that, is that something that you would generally rely on in forming a diagnosis?

A. Yes.

With regard to the cause of the infraspinatus tear, Dr. Biles testified:

Q. And in performing a diagnosis on Carol Middlemass, can you say that it is—based upon the history and everything else in the chart, that it is likely or probable that this was the result of a workplace injury?

A. Are you referring to the infraspinatus—

Q. Yes.

A. —portion?

That actually is conceivable because rotator cuff tears of the supraspinatus frequently, usually propagate. Over time, they tend to either extend into the infraspinatus or extend towards the front part of the rotator cuff, which is called the subscapularis. And it doesn't take as much trauma to extend a tear into the infraspinatus or the subscapularis if the supraspinatus is already torn.

[¶ 25] Dr. Biles continued by testifying about the symptoms associated with each of the pathologies present in Ms. Middlemass' shoulder. He stated that with supraspinatus tears, people usually feel pain at the time of the injury, but the pain may then dissipate. He stated that there is "a 15– or 20–percent incidence of people having tears of the supraspinatus that never reported any pain. So, it's conceivable that she could have good shoulder function with an isolated tear of the supraspinatus." According to Dr. Biles, a labrum tear causes the following symptoms: "It usually causes mechanical catching, clunking, popping-type symptoms when the arm is moved. There's frequently not horrible pain, but, rather, mechanical symptoms of something getting caught or popping in the shoulder." Dr. Biles was then questioned about symptoms of an infraspinatus tear and how that related to Ms. Middlemass' situation:

Q. Now, with regard to the infraspinatus tear that we see in [Ms. Middlemass'] charts, what sort of symptoms would you expect to see with that?

A. The shoulder would be more painful.... [I]f it's a partial tear, they would still be able to move their arm, but it would be more painful.

Q. If the evidence in this case shows that [Ms. Middlemass] was functioning

without pain and without appreciable limitations prior to the injury but then ever since the injury has had consistent pain in the shoulder, would that be consistent with the partial tear of the infraspinatus having occurred as she reported in her medical history?

A. Yes.

[¶ 26] Kenneth White was Ms. Middlemass' supervisor at Y–Tex and testified as to how the tag production process worked and what a packer, like Ms. Middlemass, did with the ear tags. His description of a packer's work duties generally mirrored Ms. Middlemass' testimony. Of particular importance to the issues on appeal, he testified the weight of a full bag of tags the packer would place in a shipping box was only 11.5 ounces and his description of a packer's duties did not include any overhead reaching.

[¶ 27] The hearing examiner held that Dr. Biles' testimony was insufficient to establish that Ms. Middlemass' work activities caused her infraspinatus injury. We note that it makes no difference whether the infraspinatus tear was a new injury or an aggravation of Ms. Middlemass' preexisting condition; the issue for our determination remains the same—whether her work activities caused her current condition/injury. Based upon our review of the record, we conclude the OAH decision was not against the overwhelming weight of the evidence and was, therefore, supported by substantial evidence.

[¶ 28] Dr. Biles was only able to state that it was "conceivable" or "possible" that Ms. Middlemass' infraspinatus tear was related to her work activities. Our precedent establishes that medical testimony stating the claimant's work "contributed to" the injury or the injury was "most likely" or "probably" the product of the workplace is sufficient to satisfy the requirements. *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 21, 105 P.3d 451, 458 (Wyo.2005), citing *Jim's Water Serv. v. Eayrs*, 590 P.2d 1346, 1349 (Wyo.1979) and *Claim of Vondra*, 448 P.2d 313 (Wyo.1968). *See also, Salas v. General Chemical*, 2003 WY 79, ¶ 10, 71 P.3d 708, 711 (Wyo.2003). However, "opinions expressed by medical ex-

perts in terms of 'can,' 'could,' or 'possibly' are not sufficient to meet an employee's burden of proof." *Boyce*, ¶ 22, 105 P.3d at 458, citing *Thornberg v. State ex rel. Wyo. Workers' Comp. Div.*, 913 P.2d 863 (Wyo.1996). Dr. Biles' testimony that it was "conceivable" or "possible" that Ms. Middlemass' infraspinatus tear was caused by her work activities falls within the latter category of insufficient medical proof.

[¶ 29] The hearing examiner also discounted Dr. Biles' opinion because he did not have a correct understanding of Ms. Middlemass' work activities. At one point, Dr. Biles indicated that he thought Ms. Middlemass was holding a box and putting something in it when she felt the pop. At another point, he testified that he thought she was reaching overhead when she was injured. Ms. Middlemass testified that she was reaching to grab the tags when she was injured. She did not state that she was reaching overhead or holding a box or any significant weight at the time. In fact, she testified that no overhead reaching was required to perform her work duties. A hearing examiner is not bound by a medical expert's opinion when it is "unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Watkins v. State ex rel. Wyo. Medical Comm'n*, 2011 WY 49, ¶ 25, 250 P.3d 1082, 1091 (Wyo.2011), quoting *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo. 2005). *See also, Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 93, ¶ 24, 253 P.3d 175, 181 (Wyo.2011).

[¶ 30] Interestingly, the notes from Dr. Biles' office do not state that she reported she was injured while reaching overhead or holding a box:

> On 02/12/09 Carol Middlemass was at work. She works at Y–Te[x] doing conveyor work. She states that she turned to place something in a box and heard a pop in the right shoulder. The shoulder was painful. She tried to work the next day but was unable [to] and states that it has been painful since. She has tried to work

off and on but has not been successful. She was evaluated at Urgent Care on 02/19/09.... The patient states that she has pain with reaching out and with overhead reach. She also has pain in the right shoulder when lying on it and when pushing buttons with the right hand.

Dr. Biles' misunderstanding of Ms. Middlemass' work activities could have occurred because he had never actually seen Ms. Middlemass. She testified that she had only been examined by Dr. Biles' nurse practitioner. Consequently, he was relying on his interpretation of the nurse practitioner's notes when making his diagnosis and giving his deposition testimony.

[¶ 31] Dr. Biles testified that "without lifting the box or having a load in her arm and turning her arm, it would be difficult to have these—all these injuries occur from that." Thus, Dr. Biles clearly did not believe that Ms. Middlemass could have torn her infraspinatus tendon by simply reaching for tags, as she described. Under these circumstances, there was substantial evidence to support the hearing examiner's finding that Dr. Biles' testimony did not establish that her shoulder injury was work related.

[¶ 32] Citing to *Thornberg* and *Wal–Mart Stores v. Clark*, 969 P.2d 550 (Wyo.1998),[3] Ms. Middlemass claims that medical evidence was unnecessary to establish the causation element of her claim. She asserts that these cases allow causation to be established by the claimant's testimony alone, without the need for expert medical testimony. Ms. Middlemass argues, therefore, that the uncontroverted evidence that her shoulder was fully functional and she did not have any pain before the work place incident and she was in constant pain and had very limited use of the shoulder after the incident was sufficient to establish causation.

[¶ 33] In *Thornberg*, 913 P.2d at 867, we stated: "Generally, when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the occurrence and the injury." The decision also states, however, that "under certain circumstances, medical testimony may be essential to establish a causal connection." *Id.* Mr. Thornberg injured his tailbone when the dump truck he was driving slammed down over a ridge of dirt. Several months later, he developed coccydynia which presented with symptoms of rectal discomfort and abscesses. *Id.* at 865. We held that, as a practical matter, medical testimony was indispensible in Mr. Thornberg's case because the medical condition complained of was not " 'immediately and directly or naturally and probably' " the result of the workplace incident. *Id.* at 867, quoting *Hansen v. Mr. D's Food Center*, 827 P.2d 371, 373 (Wyo.1992).

[¶ 34] As *Thornberg* confirms, there is a line of worker's compensation cases holding that medical expert testimony is not always required to establish causation. *See, e.g., Forni v. Pathfinder Mines*, 834 P.2d 688, 693 (Wyo.1992); *Hansen*, 827 P.2d at 373; *Gray v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2008 WY 115, ¶ 17, 193 P.3d 246, 251–52 (Wyo.2008). Nevertheless, *Thornberg* also recognizes that in many cases expert testimony will be required. In the case at bar, we have a claimant with a complex medical history and a complex diagnosis. She had three distinct pathologies in her shoulder, two of which were clearly preexisting. Ms. Middlemass maintains that her pain must have been caused by the infraspinatus tear because the other two conditions were not necessarily painful. While Dr. Biles stated that a patient may have a supraspinatus tear or a labrum tear and not suffer any pain, he did not indicate that was the norm or always the case. In fact, he stated that just fifteen to twenty percent of people with supraspinatus tears did not report any pain. Moreover, this is not a case

---

3. Ms. Middlemass also cites to two cases from other jurisdictions holding that, under certain circumstances, a medical expert's equivocal testimony coupled with the claimant's testimony about her condition can provide sufficient evidence to establish the causation element of a worker's compensation claim. *P & L Constr. Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn. 1978); *Miller v. Penmac Personnel Serv., Inc.*, 68 S.W.3d 574, 580 (Mo.Ct.App.2002) (overruled on other grounds). These cases are simply corroborative of Wyoming precedent and do not advance our inquiry. Consequently, we do not need to separately analyze them.

like those referenced in *Thornberg* where the injury was an immediate, direct or natural result of the workplace injury. To the contrary, Dr. Biles indicated it was unlikely that the work activities engaged in by Ms. Middlemass would have led to her shoulder injury. Compare, *Slaymaker*, ¶ 17, 156 P.3d at 983–84 (medical evidence linked the specific work activity being performed at the time of the injury and the injury).

[¶ 35] The other case Ms. Middlemass cites, *Wal–Mart*, is a negligence case and does not directly involve worker's compensation law or benefits. Wal–Mart challenged the sufficiency of Mr. Clark's evidence establishing the causal connection between his fall in the store and his injuries on the basis that there was insufficient expert medical testimony to establish the connection. Reviewing the jury's verdict, we stated:

> [T]he testimony of the plaintiff may be sufficient, without the use of experts to establish the element of causation between an accident and the plaintiff's injuries.... The jury may reasonably infer that an absence of pain prior to the accident, and the onset of pain afterwards, is evidence that the accident caused the pain.

*Wal–Mart*, 969 P.2d at 551–52.

[¶ 36] Even putting aside the obvious procedural differences between civil negligence cases and worker's compensation cases, we do not find *Wal–Mart* to be persuasive in this context. There was no indication in *Wal–Mart* that Mr. Clark had any preexisting condition or that there were any complicating factors like the two preexisting and non-compensable shoulder conditions in this case. *Wal–Mart* is so different from the case at bar, it cannot be considered to be relevant precedent.

[¶ 37] Under the circumstances presented here, the hearing examiner properly ruled expert medical testimony was required to establish that Ms. Middlemass' work activities caused the infraspinatus tear. This is not a case where the injury was immediately and directly or naturally and probably the result of Ms. Middlemass' work activities. Ms. Middlemass' history of an injury to her right shoulder in a severe automobile accident, coupled with the fact that two of the

conditions she was suffering from at the time of the workplace incident clearly were not work-related, made expert medical testimony critical to establish causation.

[¶ 38] Affirmed.